# Exhibit A



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

April 29, 2022

### *Notice of Final Rules*

WHEREAS, on November 2, 2021, Saint Paul voters approved a Rent Stabilization Ordinance for the City of Saint Paul; and

WHEREAS, the Ordinance limits residential rent increases to no more than 3% in a 12-month period, regardless of whether there is a change of occupancy; and

WHEREAS, the Ordinance also directs the City to create a process for landlords to request an exception to the 3% limit based on the right to a reasonable return on investment; and

WHEREAS, after the Rent Stabilization Ordinance became law, the Department of Safety and Inspections ("DSI") was tasked with working toward a May 1, 2022 implementation date; and

WHEREAS, on March 31, 2022, DSI posted rules to clarify and implement Saint Paul's Rent Stabilization Ordinance; and

WHEREAS, the rules were posted and open for public comment from April 7 to April 22, 2022, along with proposed processes and definitions by which landlords would request an exception to the 3% limit; and

WHEREAS, DSI fielded over two hundred comments during the public comment period; and

WHEREAS, upon careful review of all of the comments, DSI found it necessary and reasonable to amend the proposed rules, as described in its *Summary of Comments and DSI Responses* document, which is published concurrently with this Notice of Final Rules and hereby incorporated by reference; and

WHEREAS, the Department found it necessary to make other amendments to the Rules, as further indicated below; now, therefore, DSI does hereby issues notice of the following final rules, which are effective immediately.

### <u>FINAL RULES</u>

**Maintenance of Net Operating Income (MNOI) Reasonable Return Standard**

A. Reasonable Return Standard

(1) <u>Presumption of Fair Base Year Net Operating Income</u>. It shall be presumed that the net operating income received by the Landlord in the Base Year provided a reasonable return.

**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

(2) <u>Reasonable Return</u>. A Landlord has the right to obtain a net operating income equal to the BaseYear net operating income adjusted by 100% of the percentage increase in the Consumer Price Index (CPI), since the Base Year. It shall be presumed this standard provides a reasonable return.

(3) <u>Base Year</u>.

    a. For the purposes of making reasonable return determinations pursuant to this section, the calendar year 2019 is the Base Year. The Base Year CPI shall be 2019, unless subsection (b) or (c) is applicable.

    b. In the event that a determination of the allowable Rent is made pursuant to this section, if a subsequent petition is filed, the Base Year shall be the year that was considered as the "current year" in the prior petition.

    c. Unless otherwise exempted from the limitation on rent increases by local, state or federal laws or regulations, if a Rental Unit enters the marketplace for the first time after 2019, the Base Year shall be the year the Unit entered the marketplace.

(4) <u>Adjustment of Base Year Net Operating Income</u>.

Landlords or Tenants may present evidence to rebut the presumption that the Base Year net operating income provided a Reasonable return. Grounds for rebuttal of the presumption shall be based on at least one of the following findings:

    a. <u>Exceptional Expenses in the Base Year</u>. The Landlord's operating expenses in the Base Year were unusually high or low in comparisonto other years. In such instances, adjustments may be made in calculating operating expenses in order that the Base Year operating expenses reflect average expenses for the property over a reasonableperiod of time. The following factors shall be considered in making such a finding:

        i. Extraordinary amounts were expended for necessary maintenance and repairs.

        ii. Maintenance and repair expenditures were exceptionally low so asto cause inadequate maintenance or significant deterioration in the

2

**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101–1806
Tel: 651-266-8953 | Fax: 651-266-9124

quality of services provided.

    iii.  Other expenses were unreasonably high or low notwithstanding the application of prudent business practices.

  b. <u>Exceptional Circumstances in the Base Year.</u> The gross income during the Base Year was disproportionately low due to exceptional circumstances. In such instances, adjustments may be made in calculating Base Year gross rental income consistent with the purposes of this chapter. The following factors shall be considered in making such a finding:

    i.  The gross income during the Base Year was lower than it might have been because some residents were charged reducedrent.

    ii.  The gross income during the Base Year was significantly lowerthan normal because of the destruction of the premises and/or temporary eviction for construction or repairs.

    iii.  The pattern of rent increases in the years prior to the Base Year and whether those increases reflected increases in the CPI.

    iv.  Other exceptional circumstances.

(5)  <u>Calculation of Net Operating Income.</u> Net operating income shall be calculated by subtracting operating expenses from gross rental income.

  a.  <u>Gross Rental Income.</u>

    i.  Gross rental income shall include:

Gross rents calculated as gross scheduled rental income at one hundred percent occupancy and all other income or consideration received or receivable in connection with the use or occupancy of the Rental Unit, except as provided in Subparagraph (B) of this section.

If there is a difference in the number of rental units between the Base Year and the current year, in making calculations of net operating income in the

**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS

ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

Base Year and the current year, the rental income and expenses for the same number of units shall be used in calculating the net operating income for both periods.

The purpose of this provision is to ensure that a petitioner is not requesting that the current fair net operating income reach a level which was provided in the Base Year by a larger number of units or is limited to a net operating income which was formerly provided by a smaller number of units.

If there are units that are vacant or owner-occupied at the time a petition is filed which were rented in the Base Year, for the purposes of the MNOI analysis a rental income for the unit shall be calculated on the basis of average rents for comparable units in the building. If there are no comparable units in the property rental income for the vacant or owner-occupied units, the rent shall be calculated on the basis of recently established initial rents for comparable units in the City. If there are units that were rented in the current year, which were vacant or owner-occupied in the Base Year, for the purposes of the MNOI analysis a rental income for the unit for the Base Year shall be calculated on the basis of average rents for comparable units in the building in the Base Year. If there are no comparable units in the property, rental income for the vacant or owner-occupied units in the Base Year shall be calculated on the basis of Base Year rents for comparable units in the City. If a staff determination is appealed to the City Council, a Legislative, Hearing Officer may use another reasonable methodology to ensure compliance with the purposes of this subsection.

ii.   Gross rental income shall <u>not</u> include:

Utility Charges for sub-metered gas, electricity or water which are paid directly by the tenant; or

Charges for refuse disposal, sewer service, and, or other services which are either provided solely on a cost pass-through basis and/or are regulated by state or local law.

b.   <u>Operating Expenses</u>. Operating expenses include the following:

i.   <u>Reasonable costs of operation and maintenance of the Rental Unit</u>.

ii.   <u>Management expenses</u>. It must be presumed that management expenses have increased between the Base Year and the current year by the percentage increase in rents or CPI, whichever is greater, unless the level of management services has either increased or decreased significantly

4

**SAINT PAUL**

SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS

ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

between the Base Year and the current year. This presumption must also be applied in the event that management expenses changed from owner managed to managed by a third party or vice versa.

iii.  Utility costs except a utility where the consideration of the income associated with the provision of the utility service is regulated by state law and consideration of the costs associated with the provision of the utility service is preempted by state law or the income associated with the provision of the utility is not considered because it is recouped from the Tenants on a cost pass-through basis.

iv.  Real property taxes and insurance, subject to the limitation that property taxes attributable to an assessment in a year other than the Base Year or current year may not be considered in calculating Base Year and/or current year operating expenses.

v.  Property taxes assessed and paid.

vi.  License, registration and other public fees required by law to the extent these expenses are not otherwise paid or reimbursed by Tenants.

vii.  Landlord-performed labor compensated at reasonable hourly rates. However, no Landlord-performed labor shall be included as an operating expense unless the Landlord submits documentation showing the date, time, and nature of the work performed. There shall be a maximum allowed under this provision of five percent (5%) of gross income unless the Landlord shows greater services were performed for the benefit of the residents.

viii.  Legal expenses. Reasonable attorneys' fees and costs incurred in connection with successful good faith attempts to recover rents owing, successful good faith unlawful detainer actions not in derogation of applicable law, legal expenses necessarily incurred in dealings with respect to the normal operation of the Property, and reasonable costs incurred in obtaining a rent increase pursuant to SPLC 193A.

To the extent allowable legal expenses are not annually reoccurring and are substantial they shall be amortized over a five-year period, unless the City concludes that a different period is more reasonable. At the end of the amortization period, the allowable monthly rent shall be decreased by any

5

**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

amount it was increased because of the application of this provision.

ix.     <u>Adjustments to Operating Expenses</u>**.** Base Year and/or current year operating expenses may be averaged with other expense levels for other years or amortizedor adjusted by the CPI or to reflect levels that are normal for residential Rental Units or may otherwise be adjusted, in order to establish an expense amount for that item which most reasonably serves the objectives of obtaining a reasonable comparison of Base Year and current year expenses and providing a reasonable return.If the claimed operating expense levels are exceptionally high compared to prior expense levels and/or industry standards the Landlord shall have the burden of proof of demonstrating that they are reasonable and/or reflect recurring expenselevels. Expenses which are exceptional and reasonable must be amortized in order to achieve the objectives of this section.

c.    <u>Projections of Base Year Operating Expenses in the Absence of Actual Data</u>

If the Landlord does not have Base Year operating expense data, it shall be presumed that operating expenses increased by the percentage increase in the CPI between the Base Year and the current year. This presumption is subject to the exception that specific operating expenses must be adjusted by other amounts when alternate percentage adjustments are supported by a preponderance of evidence (such as data on changes in the rates of particular utilities or limitations on increases in property taxes.)

(6)   <u>Allocation of Rent Increases</u>

Rent increases authorized pursuant to this section must be allocated as follows:

a.   Rent increases for unit-specific capital improvements must be allocated to that unit;

b.   Rent increases for building-wide or common area capital improvements must be allocated equally among all units;

c.   Rent increases resulting from the Net Operating Income analysis must be allocated equally among all units;

d.   Notwithstanding the subsections above, the City, in theinterests of justice, shall have the discretion to apportion the rent increases in a manner and to the degree

6

SAINT PAUL

SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS

ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

CASE 0:22-cv-01589-NEB-JFD   Doc. 1-1   Filed 06/16/22   Page 8 of 61

necessary to ensure fairness. Such circumstances include, but are not limited to, units that are vacant or owner occupied.

(7)    Relationship of Individual Rent Adjustment to Annual General Adjustment

Any Individual Increase Adjustment established pursuant to this Section must take into account the extent of any Annual General Adjustments the Landlord may be implementing,or otherwise be entitled to, at and during the time for which the Individual Adjustment is sought regarding the petitioning year, and the Individual Adjustment may be limited or conditioned accordingly.

If it is determined that the Landlord is not entitled to an Individual Adjustment, the Landlord may implement the full upcoming General Adjustment.

(8)    Limits to Annual Rent Adjustments Based on Maintenance of Net Operating Income Standard

a.    Purpose. The purpose of this subsection (a) is to protect Tenants from substantial rent increases which are not affordable, and which may force such Tenants to vacate their homes and result in consequences contrary to the stated purposes of the Ordinance, namely, to maintain the diversity of the Saint Paul community, to preserve the public peace, health and safety, and advance the housing policies of the City.

b.    Rent Increase Limit

Notwithstanding any other provision of this regulation, the implementation of a Maximum Allowable Rent increase must be limited each year to fifteen percent (15%) of the Maximum Allowable Rent on the date the petition is filed.

If the amount of any rent increase granted under these regulations exceeds this limit, any portion in excess of the annual must be deferred.

In subsequent years deferred amounts of the allowable rent increase may be implemented.

At the end of each year the deferred amount of the increase must be calculated and an interest allowance shall be calculated based on the standard set forth in this regulation. One twelfth (1/12) of the interest allowance must be added on to full monthly increase authorized under the MNOIstandard.

7

**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

(9)     <u>Constitutional Right to a Reasonable Return.</u>


No provision of this regulation shall be applied so as to prohibit the Rent Administrator or Hearing Officer from granting anindividual rent adjustment that is demonstrated by the Landlord to be necessary to meet therequirements of this ordinance and/or constitutional reasonable return requirements.


**Planned or Completed Capital Improvements**


B. Capital Improvement Standard

(1)     <u>The Amortized Costs of Capital Improvements.</u>

Operating expenses include the amortized costs of capital improvements plus an interest allowance to cover the amortization of those costs. For purposes of this section a capital improvement shall be any improvement to a unit or property which materially adds to the value of the property, appreciably prolongs its useful life or adapts it to new use and has a useful life of more than one year and a direct cost of $250.00 or more per unit affected.

Allowances for capital improvements shall be subject to the followingconditions:

The costs are amortized over the period set forth in this regulation and in no event over a period ofless than thirty-six (36) months.

The costs do not include costs incurred to bring the Rental Unitinto compliance with a provision of the Saint Paul Legislative Code or state law where the original installation of the improvement was not in compliance with code or state law.

At the end of the amortization period, the allowable monthly rentshall be decreased by any amount it has increased due to the application of this provision.

The improvement is not an ordinary repair, replacement, and/or maintenance, and is necessary to bring the property into compliance or maintain compliance with applicable local code requirements affecting health and safety in accordance with Saint Paul Legislative Code Chapter 34.

The amortization period shall be in conformance with the following schedule adopted by the City unless it is determined that an alternate period is justified based on theevidence presented in appeal hearing.

8



Saint Paul

SAINT PAUL

SAFETY & INSPECTIONS

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

| Amortization of Capital Improvements and Expenses | |
|---|---|
| In amortizing capital improvements, and/or expenses, the following schedule shall be used to determine the amortization period of the capital improvements and/or expenses | Years |
| *Appliances* | |
| Air Conditioners | 10 |
| Refrigerator | 5 |
| Stove | 5 |
| Garbage Disposal | 5 |
| Water Heater | 5 |
| Dishwasher | 5 |
| Microwave Oven | 5 |
| Washer/Dryer | 5 |
| Fans | 5 |

| | |
|---|---|
| Cabinets | 10 |
| Carpentry | 10 |
| Counters | 10 |
| Doors | 10 |
| Knobs | 5 |
| Screen Doors | 5 |
| Fencing and Security | 5 |
| Management | 5 |
| Tenant Assistance | 5 |
| | |
| *Structural Repair and Retrofitting* | |
| Foundation Repair | 10 |
| Foundation Replacement | 20 |
| Foundation Bolting | 20 |
| Iron or Steel Work | 20 |
| Masonry-Chimney Repair | 20 |
| Shear Wall Installation | 10 |
| Electrical Wiring | 10 |
| Elevator | 20 |
| | |
| *Fencing* | |

9



| Chain | 10 |
|---|---|
| Block | 10 |
| Wood | 10 |
| | |
| *Fire Systems* | |
| Fire Alarm System | 10 |
| Fire Sprinkler System | 20 |
| Fire Escape | 10 |
| | |
| *Flooring/Floor Covering* | |
| Hardwood | 10 |
| Tile and Linoleum | 5 |
| Carpet | 5 |
| Carpet Pad | 5 |
| Subfloor | 10 |
| | |
| Fumigation Tenting | 5 |
| Furniture | 5 |
| Automatic Garage Door Openers | 10 |
| | |

| *Gates* | |
|---|---|
| Chain Link | 10 |
| Wrought Iron | 10 |
| Wood | 10 |
| | |
| *Glass* | |
| Windows | 5 |
| Doors | 5 |
| Mirrors | 5 |
| | |
| *Heating* | |
| Central | 10 |
| Gas | 10 |
| Electric | 10 |
| Solar | 10 |
| Insulation | 10 |
| | |
| *Landscaping* | |



DEPARTMENT OF SAFETY & INSPECTIONS

ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

| Planting | 10 |
|---|---|
| Sprinklers | 10 |
| Tree Replacement | 10 |
|  |  |
| *Lighting* |  |
| Interior | 10 |
| Exterior | 5 |
|  |  |
| Locks | 10 |
| Mailboxes | 10 |
| Meters | 10 |
|  |  |
| *Plumbing* |  |
| Fixtures | 10 |
| Pipe Replacement | 10 |
| Re-Pipe Entire Building | 20 |
| Shower Doors | 5 |
|  |  |
| *Painting* |  |
| Interior | 5 |
| Exterior | 5 |
|  |  |
| *Paving* |  |

| Asphalt | 10 |
|---|---|
| Cement | 10 |
| Decking | 10 |
| Plastering | 10 |
| Sump Pumps | 10 |
| Railings | 10 |
|  |  |
| *Roofing* |  |
| Shingle/Asphalt | 10 |
| Built-up, Tar and Gravel | 10 |
| Tile | 10 |
| Gutters/Downspouts | 10 |
|  |  |
| *Security* |  |
| Entry Telephone Intercom | 10 |



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

| | |
|---|---|
| Gates/Doors | 10 |
| Fencing | 10 |
| Alarms | 10 |
| | |
| Sidewalks/Walkways | 10 |
| Stairs | 10 |
| Stucco | 10 |
| Tilework | 10 |
| Wallpaper | 5 |
| | |
| *Window Coverings* | |
| Drapes | 5 |
| Shades | 5 |
| Screens | 5 |
| Awnings | 5 |
| Blinds/Miniblinds | 5 |
| Shutters | 5 |

(2)    <u>Interest Allowance for Expenses that Are Amortized</u>.

An interest allowance shall be allowed on the cost of amortized expenses. The allowance shall be the interest rate on the cost of the amortized expense equal to the "average rate" for thirty-year fixed rate on home mortgages plus two percent. The "average rate" shall be the rate Freddie Mac last published in its weekly Primary Mortgage Market Survey (PMMS) as of the date of the initial submission of the petition. In the event that this rate is no longer published, the Rent Administrator shall designate by regulation an index which is most comparable to the PMMS index.

a.    <u>Exclusions from Operating Expenses.</u> Operating expenses shall <u>not</u> include the following:

i.    Mortgage principal or interest payments or other debt service costs and costs of obtaining financing.

ii.    Any penalties, fees or interest assessed or awarded for violation of any provision of this chapter or of any other provision of law.

iii.    Land lease expenses.

iv.    Political contributions and payments to organizations or individuals which are



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

substantially devoted to legislative lobbying purposes.

    v.    Depreciation.

    vi.    Any expenses for which the Landlord has been reimbursed by any utilityrebate or discount, Security Deposit, insurance settlement, judgment for damages, settlement or any other method or device.

    vii.    Unreasonable increases in expenses since the Base Year.

    viii.    Expenses associated with the provision of master-metered gas and electricityservices.

    ix.    Expenses which are attributable to unreasonable delays in performing necessary maintenance or repair work or the failure to complete necessary replacements, which are not Tenant caused. (For example, if a roof replacement is unreasonably delayed,the full cost of the roof replacement would be allowed; however, if interiorwater damage occurred as a result of the unreasonable delay.

b.   <u>Adjustments to Operating Expenses</u>**.** Base Year and/or current year operating expenses may be averaged with other expense levels for other years or amortizedor adjusted by CPI or to reflect levels that are normal for residential Rental Units or may otherwise be adjusted, in order to establish an expense amount for that item which most reasonably serves the objectives of obtaining a reasonable comparison of Base Year and current year expenses and providing a reasonable return.If the claimed operating expense levels are exceptionally high compared to prior expense levels and/or industry standards the Landlord shall have the burden of proof of demonstrating that they are reasonable and/or reflect recurring expenselevels. Expenses which are exceptional and reasonable shall be amortized in order to achieve the objectives of this section.

c.   <u>Projections of Base Year Operating Expenses in the Absence of Actual Data</u>

If the Landlord does not have Base Year operating expense data, it shall be presumed that operating expenses increased by the percentage increase of CPI between the Base Year and the current year. This presumption is subject to the exception that specific operating expenses shall be adjusted by other amounts when alternate percentage adjustments are supported by a preponderance of evidence (such as data on changes in the rates of particular utilities or limitations on increases in property taxes.)

(3)      <u>Allocation of Rent Increases</u>



Rent increases authorized pursuant to this section shall be allocated as follows:

a.  Rent increases for unit-specific capital improvements shall be allocated to that unit;

b.  Rent increases for building-wide or common area capital improvements shall beallocated equally among all units;

c.  Rent increases resulting from the Net Operating Income analysis shall beallocated equally among all units;

d.  Notwithstanding the subsections above, the Rent Administrator or Hearing Officer, in the interests of justice, shall have the discretion to apportion the rent increases in a manner and to the degree necessary to ensure fairness. Such circumstances include, but are not limited to, units that are vacant or owner occupied.

(4)  <u>Conditional Rent Adjustments for Proposed Capital Improvements</u>

a.  In order to encourage necessary capital improvements, the Rent Administrator allows a Landlord to petition for an upward rent adjustment based upon anticipated future expenses for capital improvements. The purpose of this procedure is to permit Landlords to seek advanced authorization for future rent adjustments based upon anticipated capital improvements. A petition under this Section should only be made for anticipated expenses that the Landlord intends to incur during the twelve-month period following the date of final Rent Administrator or Hearing Officer decision. This procedure should not be used for anticipated expenses for ordinary repairs and maintenance.

b.  If the petition is granted in whole or in part, the rent increase shall be postponeduntil such time as the capital improvements are made and an Addendum authorizing the increases is issued.

c.  No addendum shall be issued for such proposed capital improvements unless theyare completed within twenty-four (24) months from the date of final decision granting the conditional rent adjustment, unless the Landlord obtains an additional addenda authorizing an extension of the time period to complete the capital improvement. Extensions may be granted due to reasonable delays in the completion of capital improvements as determined by the Hearing Officer.

**Changes in the Number of Tenants**

*Nothing in this section is intended to direct or alter the screening methods of landlords.*

C. Changes in the Number of Tenants



**SAINT PAUL**
SAFETY & INSPECTIONS

**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel:  651-266-8953 | Fax: 651-266-9124

(1)  Base Occupancy Level: The Base Occupancy Level for a Rental Unit, as used in this Chapter, shall be the number of Tenants allowed by the Rental Agreement as defined in 193A of the Ordinance for the unit effective May 1, 2022, or at the beginning of any tenancy established after May 1, 2022 (ie a new rental unit).

(2) Increase in Tenants:

    a.  If the number of Tenants allowed by the Rental Agreement actually occupying aunit as the Tenants' principal residence has increased above the Base Occupancy Level for that unit, then the Maximum Allowable Rent for the unit may be increased by up to fifteen percent (15%) for each additional tenant above the base occupancy level, in addition to any Maximum Allowable Rent adjustment to which the Landlord is otherwiseentitled.

    b.  Notwithstanding Regulation (2) a., no increase in the Maximum Allowable Rent for additional Tenants shall be granted for any additional Tenant who is a spouse, domestic partner, child, grandchild, parent, grandparent, legal guardian of a child, parent of any of the Tenants, other resident children, or caretaker/attendant as required for a reasonable accommodationfor a person with a disability, unless the Tenants agree in writing to the specific Maximum Allowable Rent increase.

    c.  If the number of Tenants actually occupying a Rental Unit as a principal residence decreases subsequent to any Maximum Allowable Rent increase for additional Tenants granted pursuant to subsection (2) a., then the Maximum Allowable Rent increase for that Rental Unit shall automatically decrease by the amount of the Maximum AllowableRent increase that is no longer justified, as a result in the decrease in the number of Tenants, unless the Tenant and Landlord agree in writing to permanently increase the Base Occupancy Level.

    d.  Increases in the Maximum Allowable Rent due to an increase in the Base Occupancy Level shall remain permanent. As such, if the number of Tenants actually occupying aRental Unit as the Tenants' principal residence decreases subsequent to any MaximumAllowable Rent increase for additional Tenants granted pursuant to subsection (2) a., then the Tenants may replace the departing Tenant with another Tenant (subject to theLandlord's standard screening methods).

(3) Decrease in Number of Tenants Allowed:

If any policy or policies imposed by the Landlord unreasonably prevent the Tenant from maintaining the Base Occupancy Level for that unit, then the Maximum Allowable Rent for thatunit shall be decreased by an amount equal to the percentage by which the number of allowable Tenants has been reduced. As used in this regulation, "policy" or "policies" means any rule, course of conduct, act or actions by a Landlord.

    a.  A policy shall be deemed unreasonable if it is different from and more restrictive thanthe policies originally used to screen the current Tenant(s).



DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel:  651-266-8953 | Fax: 651-266-9124

b.  Refusal based on the proposed additional occupant's lack of creditworthiness shall be deemed unreasonable if that person will not be legally obligated to pay some or all of therent to the Landlord.

c.  Refusal shall be deemed reasonable if the increase would bring the total number of occupants above the maximum allowable under SPLC Chapter 34, Chapter 60, Minnesota State Building Code or Minnesota State Fire Code.

(4)  <u>Grounds for Objections:</u>

Tenants responding to petitions under subsection (B) (l) may file objections with the Hearing Officer on one or more of the following grounds:

a.  The base occupancy level alleged by the landlord is incorrect; however, a tenant may notcontest a base occupancy level that was established in a prior decision;

b.  The number of tenants alleged by the landlord as being currently allowed by the lease and actually occupying the unit as a principal residence is incorrect;

c.  An additional tenant claimed by the landlord as justifying a rent increase is a spouse, registered domestic partner, child, grandchild, parent, grandparent, legal guardian of achild or caretaker/attendant as required for a reasonable accommodation for a person with a disability and the original tenant(s) did not agree in writing to an increase for such person(s);

d.  The unit is not eligible to receive annual general adjustments for any period since its rent was last certified or individually adjusted by the City. Any such objection shall identify each challenged annual general adjustment and the reason for the alleged ineligibility; or

e.  The landlord is collecting rent in excess of the Maximum Allowable Rent.

**Changes in Space or Services**

D. Changes in Space or Services

(1)  <u>Increase in Space:</u>

The Maximum Allowable Rent may be adjusted upward when, with the written agreement of the Tenant(s), there is an increase in the usable space or in the Housing Services beyond that which was provided to a unit on May 1, 2022, or when the Base Rent was first established.

a.  <u>Additional or reconfigured space</u>: Where a Landlord adds habitable living space to a unitor reconfigures it, the Maximum Allowable Rent for such unit must be permanently increased as provided under Capital Improvements.



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

b.  Additional services: Where a Landlord adds non-habitable space or increases the services provided to a unit, the Maximum Allowable Rent for such unit may be increased by an amount representing the commercially reasonable value of the additional space or increased services. If the additional or reconfigured space or the services are subsequently reduced or eliminated, the rent increase authorized herein must be reduced or terminated. Any increase for an additional bedroom may result in an increase to the Base Occupancy Level for an additional occupant.

c.  Increases may be denied if the added or reconfigured space or services do not clearly benefit a majority of the affected Tenants and a Tenant objects.

d.  If the added or reconfigured space or services clearly benefit a majority of the affected Tenants, then increases may be denied if a majority of the affected Tenants object.

(2)  Decrease in Space or Services; Substantial Deterioration; Failure to Provide Adequate Services; Failure to Comply with Codes, the Warranty of Habitability or the Rental Agreement:

*It is not the Department's intent to enforce rent decreases to the provisions below.  The rules below are to be considered wholistically with the other factors justifying an increase in Rent.*

Decreases in Space or Services. The Maximum Allowable Rent must be adjusted downward where a Landlord is aware of and causes a Tenant to suffer a decrease in housing services or living space from the services and space that were provided on May 1, 2022, or from any services or space provided at the beginning of the tenancy. The amount of the rent decrease must be calculated by multiplying the percentage of impairment of the Tenant's use of and benefit from the unit (as a result of the reduction in living space or housing services) by the Maximum Allowable Rent in effect at the time ofthe impairment, and for past decreases, multiplied by the period of time the impairment existed. In determining the amount of the downward rent adjustment by the percentage ofimpairment of use/benefit method, the City may consider the reasonable replacement cost of the space or service in question. Decreases in the Maximum Allowable Rent must not be granted due to a decrease in space or services that is a direct result of intentional actions on the part of the Tenant to purposefully cause a decrease in space or services.

a.  Denial of Petitions for Unilateral Removal: The City will not accept petitions from Landlords who seek a Maximum Allowable Rent decrease for the unilateral removal or reduction of space or services from a Tenant's base level space or services. Landlord petitions shall be accepted only when a Tenant has expressly agreed in writing to the removal of such space or services. "Base level space or services" are the housing servicesor living space that was provided at the unit on May 1, 2022, or at the beginning of the tenancy.



DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

b. <u>Inadequate Services & Substantial Deterioration:</u> The Maximum Allowable Rent must be adjusted downward for any substantial deterioration in a Rental Unit and/or for any failure to provide adequate Housing Services occurring during the petitioner's tenancy. For purposes of this subsection, a substantial deterioration means a noticeable decline in the physical quality of the Rental Unit resulting from a failure to perform reasonable or timely maintenance and adequate Housing Services means all services necessary to operate and maintain a Rental Unit in compliance with all applicable state and local laws and with the terms of the Rental Housing Agreement. The amount of the rent decrease must be calculated by multiplying the percentage of impairment of the Tenant's use of and benefit from the unit (as a result of the deterioration or failure to provide adequate service, violation, breach or failure to comply) by the Maximum Allowable Rent in effect at the time of the impairment.

c. <u>Code Violations & Breach of the Warranty of Habitability</u>:

    i. Where a condition at the Rental Unit threatens the health or safety of the occupants but does not actually impair the use of the unit, the Maximum Allowable Rent decrease shall be in an amount that reflects the reduction in value of the Rental Unit due to the unsafe or unhealthy condition.

    ii. The rent decrease authorized under this subsection for a violation of the warranty of habitability or for a code violation that poses a significant threat to the health or safety of Tenants (e.g., dangerous window bars, missing smoke detector) shall be automatically doubled prospectively if proof of correction of the violation is not submitted to the Rent Administrator within thirty-five (35) calendar days of mailing of the City's decision unless the Landlord establishes that the violation cannot be corrected within that time due to circumstances beyond the Landlord 's control.

    iii. For purposes of this subsection, a breach of the warranty of habitability occurs when the Rental Unit is not in substantial compliance with applicable building and housing code standards, which materially affect health and safety. Minor housing code violations which do not interfere with normal living requirements do not constitute a breach of the warranty of habitability.

d. Maximum Allowable Rent reductions pursuant to this Section shall be effective from the date the Landlord first had notice of the space or service reduction, deteriorated condition, service inadequacy, or code or habitability violation in question and shall terminate on the date of the first rent payment due after adequate proof has been submitted to the Rent



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101–1806
Tel: 651-266-8953 | Fax: 651-266-9124

Administrator that the condition for which the reduction was granted no longer exists.

e.  A Tenant who files a petition pursuant to this regulation must be able to establish the basis for the reduction and when the Landlord first received notice of the decreased service, deterioration, code violation or habitability violation. Notice may be actual or constructive. A Landlord is deemed to have notice of any condition existing at the inception of a tenancy that would have been disclosed by a reasonable inspection of the Rental Unit. A copy of a housing code inspection report from the City of Saint Paul should be submitted with the petition.

**Pattern of Recent Increases or Decreases in Rent**

For the purposes of determining reasonable return on investment, the pattern of recent rent increases or decreases will be determined by the Consumer Price Index (CPI) for the twelve-month period ending as of March of the current year for All Urban Consumers for the Minneapolis-St. Paul-Bloomington area (All Items) provided by the U.S. Bureau of Labor Statistics.

# Exhibit B



**SAINT PAUL**
SAFETY & INSPECTIONS

DEPARTMENT OF SAFETY & INSPECTIONS
ANGIE WIESE, INTERIM DIRECTOR

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

REQUEST FOR EXCEPTION TO 3% CAP
NOTICE OF APPROVAL THROUGH SELF-CERTIFICATION

Dear Property Representative:

You applied for an exception to the 3% cap on rent increases per Chapter 193A of Saint Paul's Legislative Code. Approval for the exception has been granted through the self-certification process provided by the City.

There are no further steps you need to take at this time. Retain your supporting documentation for at least 3 years in case it is needed for other requests in the future or for a city-initiated audit.

Tenants have the right to appeal this determination. Appeals must be in writing and delivered to the City Clerk no later than 21 calendar days from the date of their written notification of the rent increase approved under Saint Paul Legislative Code Chapter 193A. Applications for appeals may be obtained at the Office of the City Clerk, 310 City Hall, City/County Courthouse, 15 W Kellogg Blvd, Saint Paul MN 55102, Phone: 651-266-8585

If you have any questions, please reach out to the Rent Stabilization Workgroup using the email address below.


Sincerely,

Rent Stabilization Workgroup
Rent Stabilization | Saint Paul Minnesota (stpaul.gov)
Rent-Stabilization@ci.stpaul.mn.us
651-266-8553

# Exhibit C



# Notice of Increase in Rent Above 3% Annual Cap

Today's Date: _____

On November 2, 2021, Saint Paul voters approved a Rent Stabilization Ordinance for the City of Saint Paul. The Ordinance limits residential rent increases to no more than 3% in a 12-month period, even when tenants move out. The Ordinance also directs the City to create a process for landlords to request an exception to the 3% limit based on the right to a reasonable return on investment.

Your landlord, _____ has chosen the **self-certification path**, as provided for by the city.

Your rent is scheduled to increase by _____ percent on _____ (date).

Please direct questions to your landlord at: _____

Tenants have a right to appeal this determination. Appeals must be in writing and delivered to the City Clerk no later than 21 days from the date of their written notification of rent increase approved under Saint Paul Legislative Code Chapter 193A.

Applications for appeals may be obtained online ore at the address below.  Learn more about the City's appeal process and find the appeal form on the City's website: **StPaul.gov/legislative-hearings**

That office can be reached at **651-266-8560** or

**Office of the City Clerk, 310 City Hall**
**15 Kellogg Blvd. West**
**Saint Paul, MN 55102**



# Exhibit D



**SAINT PAUL**
MINNESOTA

# CITY OF SAINT PAUL RENT STABILIZATION

## Landlord Worksheet
## Rent Increase using Fair Return Standard:
## Maintenance of Net Operating Income (MNOI)

### Amortized Costs of Capital Improvements included in Operating Expenses

## Introductory Information

A landlord is entitled to a Fair Return on rental property.  Pursuant to the Rent Stabilization Ordinance, the City has adopted fair return regulations (posted on the website).

1. **Presumption of Base Year Net Operating Income**

   It shall be presumed that the net operating income received by the landlord in the Base Year provided a Fair Return. This presumption may be rebutted, in which case an adjusted Base Year Net Operating Income shall be used.

2. **Fair Return**

   A landlord has the right to obtain a net operating income equal to the Base Year (2019) net operating income adjusted by 100% of the percentage increase in the Consumer Price Index (CPI), since the Base Year.  It shall be presumed this standard provides a Fair Return.

3. **Base Year**

   (a) Calendar year 2019 is the Base Year.

   (b) In the event that a prior determination of the allowable Rent is made pursuant to a Fair Return petition, if a subsequent petition is filed, the Base Year shall be the year that was considered as the "current year" in the prior petition.

   (c) Unless otherwise exempted from the limitation on rent increases by local, state or federal laws or regulations, if a Rental Unit enters the marketplace for the first time after 2019, the Base Year shall be the year the Unit entered the marketplace.

4. **Current Year**

   The "current year" shall be the calendar year preceding the petition.

5. **CPI (Consumer Price Index)**

   The CPI for the twelve-month period ending as of March of the current year for All Urban Consumers for the Minneapolis-St. Paul-Bloomington area (All Items) provided by the U.S. Bureau of Labor Statistics.

6. **Limits of Allowable Rent Increases in Any One Year**

   If the amount of any rent increase granted pursuant to a fair return petition exceeds 15%, the portion in excess of 15% shall be deferred to the next year or years.

   In a subsequent year, deferred amounts of the allowable rent increase may be implemented, subject to the 15% ceiling on allowable increases within a year.

**I.** *General Information About the Property*

1. Street Address:_____

2. Parcel Numbers(s): _____

3. Year Property Purchased by Current Owner: _____

4. Total Number of Units on the Property: _____

5. Total Number of Units Affected by Proposed Rent Increase:_____

6. Are there Rental Units that are Partially or Fully Exempt? Number of Exempt Rental

   Units and Basis for Exemption: _____

**II.** *Landlord Information*

7. Name: _____

8. Phone(s): (_____)_____

9. Business Address:_____

10. City, State, Zip: _____

11. Business E-mail:_____

**III.** *Agent Information (if applicable)*

12. Name: _____

13. Phone(s): (_____)_____

14. Business Address:_____

15. City, State, Zip: _____

16. Business E-mail: _____

**IV.** *Services*

**17. Please Check The Applicable Boxes**
**(**Identify the manner in which each service is paid)

| Type of Service | Paid by Landlord, but not passed through to Tenants | Tenants pay service directly | Landlord pays service and passes cost through to Tenants |
|---|---|---|---|
| Gas | | | |
| Electricity | | | |
| Water | | | |
| Sewer | | | |
| Garbage | | | |
| Other: | | | |

**V.  *Changes to Services***

**18. Briefly describe the services provided to the rental units. Include all services provided and state which services are provided without additional charge:**

_____

_____

_____

**19. If there have been any changes to the services listed above or in the responsibility for their payment since the base year, please explain:**

_____

_____

_____

**VI. Income and Expense Explanation and Calculations**

**20. Calculation of Net Operating Income**

Net operating income shall be calculated by subtracting operating expenses from gross rental income.

**A.  Gross Rental Income**

Gross rental income shall include:

Scheduled rental income at one hundred percent (100%) occupancy plus all other income or consideration received or in connection with the use or occupancy of the Rental Unit.

If there is a change in the number of rental units between the Base Year & Current Year, the rental income and expenses for the same number of units shall be used in calculating the net operating income for both periods.  The purpose of this provision is to provide a fair compensation between the Base Year and the Current Year.

Vacant or owner-occupied rental units at the time a petition is filed, that provided rental income in the Base Year, shall count toward the calculation of gross rental income in the Current Year.  The Rent Program shall attribute rental income calculated on the basis of average rents for comparable units at the property that were most recently rented.  If no comparable units on the property were rented within the last two years, initial rents for comparable units in the City may be used if there is no other basis for its calculation.

**B.  Gross Rental Income Shall <u>Not</u> Include:**

(1) Utility charges that are sub-metered, for gas, electricity or water paid directly by the tenant;
(2) Charges for refuse disposal, sewer service or other services (which are either provided solely on a cost pass-through basis if they are regulated by state or local law)

### C.  Claim for Base Rent Adjustment

A claim may be made for a Base Year Rent Adjustment if the Base Year Rent and/or earlier rent amounts were disproportionately low.  A Base Year Rent Adjustment will be considered if the evidence supporting a requested adjustment is provided and sufficiently compelling enough. The Rent Program may allow Landlord to submit an independent comparable rent appraisal at the expense of the Petitioner to assist in the review of a Base Year Rent Adjustment Claim.

Landlords may rebut the presumption that the Base Year net operating income provided a fair return.  If a claim is made on this basis, the petitioner must complete the corresponding pages 19-22 at the end of this Attachment.

☐   **Check here if a claim for a Base Year Rent Adjustment is included in this Attachment and complete pages 19-22 of this Attachment.**

**VII. Operating Expenses**

**Operating expenses include:** Reasonable costs of operation and maintenance of the Rental Unit, including:

1. Management Expenses;

2. Utility Costs except a utility that are paid directly by the tenant(s);

3. Real Property Taxes Assessed and Paid;

4. Insurance;

5. License, Registration and other Public Fees;

6. Landlord-performed Labor;

7. Legal Expenses;

8. The Amortized Costs of Capital Improvements; and

9. Other Reasonable Operating Expenses.

**Operating expenses shall <u>not</u> include the following:**

1. Mortgage principal or interest payments or other debt service costs and costs associated with obtaining financing;

2. Any penalties, fees or interest assessed or awarded for violation of any provision of this chapter or of any other provision of law;

3. Land lease expenses;

4. Political contributions and payments to organizations or individuals which are substantially devoted to legislative lobbying purposes;

5. Depreciation;

6. Any expenses for which the Landlord has been reimbursed by any utility rebate or discount, Security Deposit, insurance settlement, judgment for damages, settlement or any other method or device;

7. Unreasonable increases in expenses since the Base Year;

8. Expenses associated with the provision of master-metered gas and electricity services;

9. Expenses which are attributable to unreasonable delays in performing necessary maintenance or repair work or the failure to complete necessary replacements. (For example if a roof replacement is unreasonably delayed, the full cost of the roof replacement would be allowed; however, if interior water damage occurred as a result of the unreasonable delay, that expense would not be allowable to support a fair return); and

10. Unreasonable Expenses.

## VIII. Income and Operating Expense Worksheet

| (Insert Base and Current Years) | Annual Total | |
|---|---|---|
| | Base Year (2019)** | Current Year (2021) |
| **Rental Income** | $ | $ |
| **1. Gross scheduled rental income (monthly rent in effect on January 1, 2019 times 12) including uncollected rent.** | $ | $ |
| 2. Portion Attributable to Vacancy | $ | $ |
| Fees (indicate what fee is for): | | |
| 3. Late fees | $ | $ |
| 4. List fees, other than utilities, collected for services & amenities not included in rent | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| **Other Income (list separately by type)*:** | | |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **Fees for Utilities** | | |
| 11. Gas | $ | $ |
| 12. Electricity | $ | $ |
| 13. Water | $ | $ |
| 14. Sewer | $ | $ |
| 15. Garbage & Recycling | $ | $ |
| Other (list separately by type) | | |
| 16. | $ | $ |
| 17. | $ | $ |
| | | |
| **18. Total Income** | **$** | **$** |
| (add only lines 1 and 3-17) | | |
| | | |
| | | |
| *Interest earned by Landlord on Tenant security deposits, other interest or investment income. | **(or an alternative year in the event of extenuating circumstances) | |

| IX.  Operating Expenses Worksheet **(Insert Base and Current Years)** | Annual Total | |
|---|---|---|
| | **Base Year (2019)** | **Current Year (2021)** |
| **1.** Assessments | $ | $ |
| **2.** Real Property Taxes | $ | $ |
| **3.** License Tax/Fee | $ | $ |
| **4.** Rent Board Registration Fees | $ | $ |
| **5.** Insurance | $ | $ |
| **6.** Accounting | $ | $ |
| **7.** Legal (explain types of legal expenses) | $ | $ |
| **8.** Manager /Management Services | $ | $ |
| **9.** Security | $ | $ |
| **10.** Office Supplies | $ | $ |
| **12.** Normal Repairs | $ | $ |
| **13.** Owner-Performed Labor | $ | $ |
| **14.** Plumbing Maintenance | $ | $ |
| **15.** Pool Maintenance | $ | $ |
| **16**. Landscape Maintenance | $ | $ |
| **17.** Other Maintenance | $ | $ |
| **18**. Parking Lot/Street Maintenance | $ | $ |
| **19.** Gas (separately metered only) | $ | $ |
| **20.** Electricity (separately metered only) | $ | $ |
| **21.** Water | $ | $ |
| **22.** Sewer | $ | $ |
| **23.**Amortized portion of Capital Expense [from page _____; column (i) ] | $ | $ |
| Other **(list separately by type):** | | |
| **24. Vandalism Repairs** | $ | $ |
| **25. Uninsured Damages** | $ | $ |
| **26.** | $ | $ |
| Additional operating expense items can be listed for this worksheet using separate page(s) as needed. | | |
| **27. TOTAL OPERATING EXPENSES** | $ | $ |

## X.  Allowances for Capital Improvements

**The Amortized Costs of Capital Improvements**. Operating expenses include the amortized costs of capital improvements plus an interest allowance to cover the amortization of those costs.  A capital improvement shall be any improvement to a unit or property which materially adds to the value of the property, appreciably prolongs its useful life or adapts it to a new use and has a useful life of more than one year and a direct cost of $250.00 or more per unit. Allowances for capital improvements shall be subject to the following conditions:

1.  The amortization period shall be in conformance with the schedule adopted by the the City, as provided on pages 9-10, unless it is determined that an alternate period is justified based on the evidence presented in an appeals hearing.

2.  Capital improvement costs do not include costs incurred to bring the Rental Unit into compliance with a provision of the Saint Paul Legislative Code or state law where the original installation of the improvement was not in compliance with code requirements.

3.  At the end of the amortization period, the allowable monthly rent shall be decreased by any amount of a rent increase attributable to the capital improvement.

4.  Portions of fair return rent increases that are attributable to capital improvements expire at the end of the amortization period.

Example of a Capital Improvement with Amortized  Expenses and an Interest Allowance:

Owner filed a Petition on May 1, 2022 for an individual rent adjustment for a roof that was completed covering a four-rental unit building.  The cost of the Capital Improvement was $20,000 benefiting all four units in the building.  The amortization period for a roof is ten (10) years according to the below tables.  The applicable interest allowance based on the Primary Mortgage Survey is 3.88% + 2% for this example.  The calculation of the capital improvement per month is:

| Capital Improvement Cost | Interest Allowance | Period | Total Principal & Interest – Life of Improvement | Total Interest – Life of Improvement |
|---|---|---|---|---|
| $20,000 | 5.88% | 10 yrs. 120 mos. | $26,500.52* | $6,500.52 |

| Annual Amortized Cost | Monthly Amortized Cost | # of Units | Monthly Cost per Unit |
|---|---|---|---|
| $2,650.05 | $220.84 | 4 | $55.21 |

## XI. Amortization Period of Capital Improvements/Expenses

| | Years |
|---|---|
| In amortizing capital improvements/ expenses, the following schedule shall be used to determine the amortization period of the capital improvements and expenses.  Improvements add to the health & safety of the rental unit. | |
| **Appliances** | |
| Air Conditioners* | 10 |
| Refrigerator* | 5 |
| Stove* | 5 |
| Garbage Disposal | 5 |
| Water Heater* | 5 |
| Dishwasher | 5 |
| Microwave Oven | 5 |
| Washer/Dryer | 5 |
| Fans* | 5 |
| Cabinets* | 10 |
| Carpentry | 10 |
| Counters* | 10 |
| Doors* | 10 |
| Knobs | 5 |
| Screen Doors | 5 |
| Fencing and Security* | 5 |
| Management | 5 |
| Tenant Assistance | 5 |
| | |
| **Structural Repair and Retrofitting** | |
| Foundation Repair* | 10 |
| Foundation Replacement* | 20 |
| Foundation Bolting* | 20 |
| Iron or Steel Work | 20 |
| Masonry-Chimney Repair* | 20 |
| Shear Wall Installation* | 10 |
| Electrical Wiring* | 10 |
| Elevator* | 20 |
| | |
| **Fencing** | |
| Chain | 10 |
| Block | 10 |
| Wood | 10 |
| | |
| **Fire Systems** | |
| Fire Alarm System* | 10 |
| Fire Sprinkler System* | 20 |
| Fire Escape* | 10 |

| | Years |
|---|---|
| **Flooring/Floor Covering** | |
| Hardwood | 10 |
| Tile and Linoleum | 5 |
| Carpet | 5 |
| Carpet Pad | 5 |
| Subfloor | 10 |
| | |
| Fumigation Tenting* | 5 |
| Furniture | 5 |
| Automatic Garage Door Openers* | 10 |
| | |
| **Gates** | |
| Chain Link | 10 |
| Wrought Iron | 10 |
| Wood | 10 |
| | |
| **Glass** | |
| Windows* | 5 |
| Doors* | 5 |
| Mirrors | 5 |
| | |
| **Heating*** | |
| Central | 10 |
| Gas | 10 |
| Electric | 10 |
| Solar | 10 |
| Insulation | 10 |
| | |
| **Landscaping** | |
| Planting | 10 |
| Sprinklers | 10 |
| Tree Replacement | 10 |
| | |
| **Lighting** | |
| Interior* | 10 |
| Exterior* | 5 |
| | |
| Locks* | 10 |
| Mailboxes* | 10 |
| Meters* | 10 |
| | |
| **Plumbing** | |
| Fixtures* | 10 |
| Pipe Replacement* | 10 |
| Re-Pipe Entire Building* | 20 |
| Shower Doors* | 5 |

| | |
|---|---|
| *Painting* | |
| Interior | 5 |
| Exterior | 5 |
| | |
| *Paving* | |
| Asphalt | 10 |
| Cement | 10 |
| Decking | 10 |
| Plastering | 10 |
| Sump Pumps* | 10 |
| Railings* | 10 |
| | |
| *Roofing** | |
| Shingle/Asphalt | 10 |
| Built-up, Tar and Gravel | 10 |
| Tile | 10 |
| Gutters/Downspouts | 10 |
| | |
| *Security** | |
| Entry Telephone Intercom | 10 |
| Gates/Doors | 10 |
| Fencing | 10 |
| Alarms | 10 |
| | |
| Sidewalks/Walkways* | 10 |
| Stairs | 10 |
| Stucco | 10 |
| Tilework | 10 |
| Wallpaper | 5 |
| | |
| *Window Coverings** | |
| Drapes | 5 |
| Shades | 5 |
| Screens | 5 |
| Awnings | 5 |
| Blinds/Mini-blinds | 5 |
| Shutters | 5 |

*Capital Improvements generally concern any change or addition to a unit or property which materially adds to the value of the property, appreciably prolongs its useful life or adapts it to a new use and has a useful life of more than one year and a direct cost of $250 or more per unit.

The * items are likely capital improvements. Other items may depend on the circumstances.

**XII.** *Interest Allowance*

If an amount was reported as an amortized portion of expenses on page 7, line 23 of the Base Year or current operating expense table above, complete this section.

An interest allowance may be calculated on the cost of amortized expenses. The interest allowance shall be the interest rate equivalent to the "average rate" for a thirty-year fixed rate on home mortgages plus two percent (2%). The "average rate" shall be the rate Freddie Mac last published in its weekly Primary Mortgage Market Survey (PMMS) as of the date of the initial petition.
http://www.freddiemac.com/pmms/archive.html

### 1. Completed Capital Improvement and Expense Worksheet (**Base Year**)

| (a) Item # | (b) Description of Expense | (c) # of Units Impacted By Expense If not all units | (d) Initial Cost | (e) Interest Rate Allowed* | (f) Amortization Period (years)* | (g) Interest Amount | (h) Total Cost [Principal + Interest] | (i) Annual Cost | (j) Monthly Cost | (k) Monthly Cost Per Unit |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | $ | % | | | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |

*Use the amortization table in this Attachment and the information about interest rates.   Fill in columns (a) through (f) and then columns (g) through (k) will fill in automatically.

Total for Base Year: $_____
[add amounts in column (d)]

### 2. Completed Capital Improvement and Expense Worksheet (**Current Year**)

| (a) Item # | (b) Description of Expense | (c) # of Units Impacted By Expense If not all units | (d) Initial Cost | (e) Interest Rate Allowed* | (f) Amortization Period (years)* | (g) Interest Amount | (h) Total Cost [Principal + Interest] | (i) Annual Cost | (j) Monthly Cost | (k) Monthly Cost Per Unit |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | $ | % | | | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |

*Use the amortization table in this Attachment and the information about interest rates.   Fill in columns (a) through (f) and then columns (g) through (k) will fill in automatically.

Total for Current Year: $_____

**XIII.  Blank Worksheet (Optional – Available for Petitioner Use)**

**XIV. *Owner Performed Labor***

Landlord-performed labor shall be compensated at reasonable hourly rates. However, no Landlord-performed labor shall be included as an operating expense unless the Landlord submits documentation showing the date, duration, and nature of the work performed. There shall be a maximum allowed under this provision of five percent (5%) of gross income unless the Landlord demonstrates that greater services were performed for the benefit of the residents.

### Owner Performed Labor – Base Year

| Date | Hours | Hourly Rate | Units Impacted | Type of Work |
|------|-------|-------------|----------------|--------------|
|      |       |             |                |              |
|      |       |             |                |              |
|      |       |             |                |              |
|      |       |             |                |              |

### Owner Performed Labor – Current Year

| Date | Hours | Hourly Rate | Units Impacted | Type of Work |
|------|-------|-------------|----------------|--------------|
|      |       |             |                |              |
|      |       |             |                |              |
|      |       |             |                |              |
|      |       |             |                |              |

**XV. Planned Capital Improvements**

To encourage necessary capital improvements and expenses, a Landlord may include anticipated future expenses for the amortized cost of capital improvements and expenses in a fair return petition. An allowance shall be made for anticipated expenses that the Landlord intends to incur during the twenty-four month period following the date of a final Rent Program determination. This procedure should not be used for anticipated expenses for ordinary maintenance and repairs. The portion of any allowable rent increase attributable to the capital improvement and expense shall not go into effect until completion has been documented to the Rent Program.

Complete this table only if you are seeking preliminary approval for improvements you plan to complete within the next twenty-four (24) months. A rent increase cannot be granted until the improvements are completed and documentation of the cost of the improvements has been reviewed and approved by the City.

**Column:**
**(b) - Identify capital improvements and expenses you plan to complete within twenty four (24) months.**
**(c) - List each unit that will benefit from the capital improvement/expense.**
**(b) - Provide the date you expect to complete each capital improvement/expense.**
**(d) - State the estimated cost of each improvement/expense.**

| (a) Item # | (b) Description of Expense & Estimated Date of Completion | (c) # of Units Impacted By Expense If not all units | (d) Initial Cost | (e) Interest Rate Allowed* | (f) Amortization Period (years)* | (g) Interest Amount | (h) Total Cost [Principal + Interest] | (i) Annual Cost | (j) Monthly Cost | (k) Monthly Cost Per Unit |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |
| | | | $ | % | | $ | $ | $ | $ | $ |

*Use the amortization table in this Attachment and the information about interest rates.  Fill in columns (a) through (f) and then columns (g) through (k) will fill in automatically.

**Proposed** Total Capital Expenses $ _____

*XVI. Net Operating Income (NOI)*

**Net Operating Income = Income ‒ Operating Expenses:**

|  | **Base Year (2019)** | **Current Year (2021)** |
|---|---|---|
| **1. Total Annual Income** | $_____ | $_____ |
| **2. Annual Operating Expenses** | $_____ | $_____ |
| **3.Current Net Annual Operating Income** (Income ‒ Operating Expenses): | $_____ | $_____ |
| **4. CPI** [Annual Average CPI] | 250.106 | 265.244 |
| **5. Percent Annual Increase in CPI Base Year to Current Year** [Current Year Annual Average CPI ‒ Base Year Annual Average CPI divided by Base Year Annual Average CPI] | | 6.05% |
| **6. Fair Net Annual Operating Income = Base Year Net Operating Income Adjusted by CPI Increase** [Line 3 Base Year + Line 5 percent] | | $_____ |
| **7. Fair Net Annual Operating Income Minus Current Net Operating Income = Allowable Rent Increase** [Line 3 Current Year ‒ Line 6] | | $_____ |
| **8.Allowable Rent Increase/Unit/Month** (Line 7 divided by Number of Units divided by 12 months) | | $_____ |

***XVII. Monthly Rents for each Rental Unit** (Initial Rent, Previous, Current, and Proposed Rent)*

**Data for Each Rental Unit**

List the monthly rent, including all fees, charged each tenant, for the twelve (12) months preceding the date of the petition. If the rent was raised during the twelve-month period preceding the petition, including the amount of any fees, list each rent charged and indicate the date each raise was implemented. Provide the year and amount of any unused Annual General Adjustments authorized by the City that have been banked with proper notice to each tenant for future rent increases.

Attach all documentation supporting this income.

A Monthly Rent Worksheet and a Proposed Rent Worksheet are provided on pages 17 – 18 for your convenience.

## XVIII. Monthly Rent Worksheet

| Unit # | Rent | AGA Increase | Date of Increase | AGA Taken (%) | AGA Deferred (%) | Other Charges (Please specify) | Comment |
|--------|------|--------------|------------------|---------------|------------------|-------------------------------|---------|
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |
| | $ | $ | | % | % | $ | |

## XIX. Proposed Adjustment Worksheet

| Unit # | Base Period Rent Year (2019) | Date Tenancy Commenced (mm/dd/yyyy) | Initial Rent of Current Tenant/s | Date of Last Rent Increase (mm/dd/yyyy) | Rent used in Current Year Income Calculation | Rent as of Date Petition Submitted | Proposed Rent |
|---|---|---|---|---|---|---|---|
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |
|  |  | / / | $ | / / | $ | $ | $ |

## XX. CLAIM FOR ADJUSTMENT OF BASE YEAR NET OPERATING INCOME AND ASSOCIATED RENT ADJUSTED CLAIM

Landlords may present evidence to rebut the presumption that the base year net operating income provided a fair return.  Grounds for rebuttal of the presumption shall be based on at least one of the following findings:

1.   **Check this box ☐ if you are requesting a base rent adjustment in your maintenance of net operating fair return claim.**

2.   **Check the factors below that are applicable to your claim.**

☐A.   <u>Exceptional Expenses in the Base Year</u>.  The landlord's operating expenses in the base year were unusually high or low in comparison to other years.  In such instances, adjustments may be made in calculating operating expenses in order that the base year operating expenses reflect average expenses for the property over a reasonable period of time.  Check which factor(s) contributed to your claim:

☐ (i) Extraordinary amounts were expended for necessary maintenance and repairs

☐ (ii) Maintenance and repair expenditures were exceptionally low as to cause inadequate maintenance or significant deterioration in the quality of services provide

☐ (iii) Other expenses were unreasonably high or low notwithstanding the application of prudent business practices.

☐B.   <u>Exceptional Circumstances in the Base Year</u>.  The gross income during the base year was disproportionately low due to exceptional circumstances.  In such instances, adjustments may be made in calculating base year gross rental income consistent with the purpose of analyzing base year net operating income.  Check which factor(s) contributed to your claim:

☐ (i)  The gross income during the base year was lower than it might have been because some residents were charged reduced rent.

☐ (ii)  The gross income during the base year was significantly lower than normal because of the destruction of the premises and/or temporary relocation for construction or repairs.

☐ (iii)  The pattern of rent increases in the years prior to the base year were less than increases in the CPI.

☐ (iv)  Base year rents were disproportionately low in comparison to the base year rents of comparable rental units in the City of Saint Paul.

☐ (v)  Other exceptional circumstances

**[Petitioners submitting a claim based on this factor may be required to pay for an independent appraisal by an appraiser approved by the City]**.

☐C.   <u>Explanation for Basis in Support of Claim for Adjustment of Base Year Rent</u>.

_____

_____

_____

_____

| XXI. Income and Operating Expense Worksheet With Adjustment of Base Year Amounts | | |
|---|---|---|
| **Annual Total** | | |
| (Insert Base and Current Years) | **Base Year (2019)** | **Current Year (2021)** |
| **Rental Income** | $ | $ |
| **1. Gross scheduled rental income (monthly rent in effect on May 1, 2022 times 12) including uncollected rent.** | $ | $ |
| 2. Portion Attributable to Vacancy | $ | $ |
| Fees (indicate what fee is for): | | |
| 3. Late fees | $ | $ |
| 4. List fees, other than utilities, collected for services & amenities not included in rent | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| **Other Income (list separately by type)\*:** | | |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **Fees for Utilities** | | |
| 11. Gas | | |
| 12. Electricity | $ | $ |
| 13. Water | $ | $ |
| 14. Sewer | $ | $ |
| 15. Garbage & Recycling | $ | $ |
| **Other (list separately by type)** | | |
| 16. | $ | $ |
| 17. | $ | $ |
| **18. Total Income** | $ | $ |
| (add only lines 1 and 3-17) | | |
| | | |
| | | |
| \*Interest earned by Landlord on Tenant security deposits, other interest or investment income. | | |

**XXIII.  Calculation of Fair Return Rent Adjustment with Adjustments of Base Year Amount:**

|  | Base Year | Current Year |
|---|---|---|
|  | **(2019)** | **(2021)** |

**1. Proposed Adjusted/Total Income\***     $ _____     $ _____

**2.Operating Expenses**     $ _____     $ _____

**3. Net Operating Income
(Income – Operating Expenses):**     $ _____     $ _____

**4. CPI**
   [Annual Average CPI]          250.106          265.244

**5. Percent Annual Increase in CPI
   Base Year to Current Year**          6.05%
   [Current Year Annual Average CPI –
   Base Year Annual Average CPI divided by
   Base Year Annual Average CPI]

**6. Fair Net Annual Operating Income =
   Base Year Net Operating
   Income Adjusted by CPI
   Increase**          $ _____
   [Line 3 Base Year + Line 5 percent]

**7. Fair Net Annual Operating Income
   Minus Current Net Operating Income =
   Allowable Rent Increase**          $ _____
   [Line 3 Current Year – Line 6]

**8.Allowable Rent Increase/Unit/Month**          $ _____
(Line 7 divided by Number of Units divided by 12 months)


**\*   This MNOI calculation requires a determination of an adjustment to the Base Year Total Income prior to completing this form.  The proof provided in support of the Exceptional Circumstances required on Page 19 sections 2 (A) and 2 (B) of this form will determine if an adjustment is appropriate.  A proposed Base Year Total Income adjustment can be provided as a starting point.**

**XXIV. Other Claims**


Explain any other claims in support of this application and provide/attach any evidence in support of those claims.  Please use additional pages as appropriate:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


**XXV.   Documentation of Current Year & Operating Expenses**

1.  Organize documents by operating expense category.

2.  Number each page, submitted with this Attachment, with the number of the Expense Category (for instance on page 7, category of Landscape Maintenance is on line 16, any documents supporting that line item would be marked p.7, 16-1, p. 7 16-2, p. 7 16-3 and so on).

# Exhibit E



# CITY OF SAINT PAUL RENT STABILIZATION

## Landlord Worksheet
## Documentation of Increases in Tenants

### Introductory Information

A landlord is entitled to a fair return on rental property. Pursuant to the Rent Stabilization Ordinance, the City has established a process by which landlords can request exceptions to the limitation on rent increases based on the right to a fair return. The details of the process are available at our website.

If the number of tenants allowed by the rental agreement has increased, and those additional tenants are actually occupying the unit as the their principal residence, then the rent for the unit may be increased by up to fifteen percent (15%) for each additional tenant above the base occupancy level.  This increase is in addition to any rent adjustment to which the landlord is otherwise entitled.

However, no increase in rent for additional tenants shall be granted for any additional tenant who is a spouse, domestic partner, child, grandchild, parent, grandparent, legal guardian of a child, parent of any of the Tenants, other resident child, or caretaker/attendant as required for a reasonable accommodation for a person with a disability, unless the Tenants agree in writing to the increase.

This worksheet is intended to be used by landlords who are seeking an exception to the 3% annual limitation on rent increases based on an increase in the number of tenants occupying a unit.  If you are seeking an exception based on an increase in the number of tenants and other factors, you will need to fill-out other necessary worksheets in addition to this Increases in Tenants worksheet.

If requesting an exception by *self-certification*, the landlord must retain this completed worksheet for at least 3 years.

If requesting a *staff determination*, the worksheet should be sent to the city to be reviewed in coordination with other required documentation. The worksheet can be sent by replying to the email received after submitting the Request for Exception form.

**I. General Information About the Property**

1. Street Address:_____

2. Parcel Numbers(s): _____

3. Year Property Purchased by Current Owner: _____

4. Total Number of Units on the Property: _____

5. Name/Number of Unit Affected by Proposed Rent Increase:_____

6. Other: _____

**II. Landlord Information**

7. Name: _____

8. Phone(s): (_____)_____

9. Business Address:_____

10. City, State, Zip: _____

11. Business E-mail:_____

**III. Agent Information** *(if applicable)*

12. Name: _____

13. Phone(s): (_____)_____

14. Business Address:_____

15. City, State, Zip: _____

16. Business E-mail: _____

**IV. Changes in Tenants**

**17. Briefly describe the tenants in the rental unit. Include their relationship to one another to the extent you are aware:**

_____

_____

_____

**18. Briefly describe the *additional* tenants in the rental unit. Include their relationship to one another to the extent you are aware:**

_____

_____

_____

# Exhibit F



# CITY OF SAINT PAUL RENT STABILIZATION

## Landlord Worksheet
## Unit by Unit Percent Increase Requested

### Introductory Information

A landlord is entitled to a fair return on rental property.  Pursuant to the Rent Stabilization Ordinance, the City has established a process by which landlords can request exceptions to the limitation on rent increases based on the right to a fair return.  The details of the process are available at our website.

The following worksheet is to document the percentage increase the landlord is proposing when that percentage differs across units.  If the same percent increase will occur for all units, that should be noted on the Request for Exception form and this worksheet does *not* need to be filled out.

If requesting an exception by *self-certification*, the landlord must retain this completed worksheet for at least 3 years.

If requesting a *staff determination*, the worksheet should be sent to the city to be reviewed in coordination with other required documentation.  The worksheet can be sent by replying to the email received after submitting the Request for Exception form.

**I. *General Information About the Property***

1. Street Address:_____

2. Parcel Numbers(s): _____

3. Year Property Purchased by Current Owner: _____

4. Total Number of Units on the Property: _____

5. Total Number of Units Affected by Proposed Rent Increase:_____

6. Are there Rental Units that are Partially or Fully Exempt? Number of Exempt Rental Units and Basis for Exemption: _____

**II. *Landlord Information***

7. Name: _____

8. Phone(s): (_____)_____

9. Business Address:_____

10. City, State, Zip: _____

11. Business E-mail:_____

**III. *Agent Information* (if applicable)**

12. Name: _____

13. Phone(s): (_____)_____

14. Business Address:_____

15. City, State, Zip: _____

16. Business E-mail: _____

**IV. *Percent Increase by Unit***

| Unit | Proposed Percentage Increase |
|---|---|

**IV.** *Percent*
*Increase by Unit*
*(continued)*

| Unit | Proposed Percentage Increase |
| --- | --- |

| **IV. _Percent Increase by Unit_** (continued) | **Unit** | **Proposed Percentage Increase** |
| --- | --- | --- |

# Exhibit G



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel:  651-266-8953 | Fax: 651-266-9124

April 29, 2022

**Re:  Summary of Comments and DSI Responses**

### Introduction

On November 2, 2021, Saint Paul voters approved a Rent Stabilization Ordinance for the City of Saint Paul.  The Ordinance limits residential rent increases to no more than 3% in a 12-month period, regardless of whether there is a change of occupancy.  The Ordinance also directs the City to create a process for landlords to request an exception to the 3% limit based on the right to a reasonable return on investment.

After the Rent Stabilization Ordinance became law, the Department of Safety and Inspections ("DSI") was tasked with working toward a May 1, 2022 implementation date.  To that end, DSI proposed rules to clarify and implement the Rent Stabilization Ordinance.  The rules were posted and open for public comment from April 7 to April 22, along with proposed processes and definitions by which landlords would request an exception to the 3% limit.

Upon receipt of the comments, DSI found it necessary to make several changes to the proposed rules, which are now reflected in the final rules.  The following serves to illustrate some of the common themes of the comments, as well as the DSI Director's response to the comments.  While the summary does not address each comment received, the Department carefully reviewed every comment to determine whether a rule change was necessary.

### Summary of Comments and DSI Reponses

The most common responses centered around the following:

**1.  Changes in the Number of Tenants**

The Director fielded questions concerning the number of tenants impacting a rental unit.  Some commenters requested that the Director change the designation from including "children" of a renter to simply refer to "resident children," rather than designate as family.

*Director response*: the Director has adopted a final rule that clarifies that, in addition to the situations outlined in the proposed rule, "other resident children" is included to ensure that the rule is inclusive of all situations where children reside in the home.



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

### 2. Designation of 2019 as the Base Year

The Director fielded comments that generally supported the designation of 2019 as the base year but requested clarification on certain issues.  For instance, some comments inquired whether the base year is implicated by increases in rent less than 3%.

*Director response*: the use of base year for purposes of the Maintenance of Net Operating Income ("MNOI") standard pertains to petitions for rent increases above 3%.  No consideration of 2019 as the base year is necessary for rent increases below 3% annually.  If a landlord petitions to increase rent by more than 3%, one way the landlord can demonstrate that the increase is tied to a reasonable return on investment is to demonstrate that the Consumer Price Index, relative to the base year, coupled with other eligible costs and expenses related to the property results in a need for an increase of greater than 3%.  Importantly, a base year of 2019 does not mean that the Rent Stabilization Ordinance is retroactive to 2019.

Other comments indicated that certain landlords purposely suppressed rent during 2019 for various reasons.  The comments expressed a concern that 2019 is not representative of normal income.

*Director response*: to the extent a landlord suppressed contract rent during Base Year 2019, Final Rule (A)(4) creates an opportunity for a landlord to rebut the presumption that Base Year 2019 net operating income provided a reasonable return on investment.

Multiple comments asked for clarification on the rules use the Consumer Price Index as the basis for determining a reasonable return on investment.

*Director response*: the Department chose the Consumer Price Index because it is a reliable proxy for measuring the change in a landlord's cost of providing rental housing.  This is the practice in almost every other jurisdiction that has a rent stabilization ordinance in effect.

Finally, multiple comments asked for clarification on what the base year is for rental properties that were not on the market in 2019.

*Director response*: the Director has adopted a final rule that clarifies that the base year for rental properties that were not on the market in 2019 is the year that the property entered the market.

### 3. Capital Improvements and Amortization



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel:  651-266-8953 | Fax: 651-266-9124

The Director fielded multiple comments regarding amortization schedules for capital improvements.  For instance, some commenters asked how capital improvement expenses not listed in the amortization schedule should be handled.

*Director response*: the Department has adopted a final rule that includes amortization schedules for a number of capital improvements, but is not able to capture every possible situation.  Landlords should submit evidence of the amortization schedule they use for any capital improvements not listed in the schedule.  Amortization schedules for unlisted items must not be less than 36 months.

### 4. *Maintenance of Net Operating Income*

The Director fielded comments on the use of the MNOI standard for determining what constitutes a reasonable return on investment, including the rationale for proposing a rule around MNOI.

*Director response*: upon review of these comments, the Department has adopted a final rule implementing the MNOI standard for determining a reasonable return on investment.  The Department selected MNOI based on the practices of other jurisdictions that enforce rent stabilization, case law from those jurisdictions, case law from jurisdictions of binding precedent, literature supporting the use of MNOI, comments supporting the use of MNOI, and other pertinent information.

The Director also fielded comments on MNOI as it pertains to the percentage cap on rent increases.

*Director response*: the 3% cap is required by the voter-approved ordinance.  However, the final rules indicate that landlords may petition for increases above the 3% cap, up to 15%, so long as the landlord can demonstrate through a petition that the increase is necessary to recover a reasonable return on the landlord's investment.  The final rule also provides that any amount of any rent increase granted in excess of 15% must be deferred and implemented in subsequent years.

Finally, the Director did receive feedback on using 2019 as the base year for measuring MNOI.

*Director response*: given the COVID-19 pandemic and ensuing economic volatility, the final rule adopts 2019 as the base year.  The Department felt 2019 was an appropriate base year, given the relative lack of general economic volatility during 2019, as well as it being a fairly recent time



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel: 651-266-8953 | Fax: 651-266-9124

period.  As noted above, Rule (A)(4) allows a landlord to rebut the presumption that 2019 Base Year net operating income provided a reasonable return on investment.

### 5.  Operating Expenses

The Director fielded several comments asking for clarification on why mortgage principal and interest payments, land lease expenses, and depreciation are excluded from the definition of "operating expenses."

*Director response*: operating expenses refer to ongoing costs that are necessary to operate and maintain a residential rental property and ensure its ability to produce income.  As such, the Department's final rule adopts a definition of "operating expenses" that does not include mortgage principal and interest payments, land lease expenses, and depreciation.

### 6.  Petition Process

The Director fielded several comments on the petition process, including feedback on self-certification.

*Director response:* regarding self-certification, landlords are still required to demonstrate the need for a deviation from the 3% limitation on rent increases to achieve a reasonable rate of return on their investment.  The Department has determined that the audit process is an effective, efficient, and appropriate means of enforcing this requirement.   The Department will also investigate self-certified petitions upon receipt of a complaint from a tenant.

The Director also received several questions regarding the tenant complaint and appeals processes.

*Director response*: regarding the complaint process, tenants may file complaints against landlords who they believe are violating the Rent Stabilization Ordinance by completing and submitting a web-based complaint form, which can be found on the City of Saint Paul Rent Stabilization website.  Regarding the appeals process, landlords and tenants may appeal a staff determination to the Legislative Hearing Officer within ten (10) days.

### 7.  Tenant Notification

The Director fielded comments requesting tenant notification that a landlord has applied for a rent increase.



**DEPARTMENT OF SAFETY & INSPECTIONS**
**ANGIE WIESE, INTERIM DIRECTOR**

375 Jackson Street, Suite 220
Saint Paul, MN 55101-1806
Tel:  651-266-8953 | Fax: 651-266-9124

*Director response*: the Rent Stabilization Ordinance only grants the Department authority to create rules defining and clarifying a landlord's right to a reasonable return on investment.  It does not give the Department authority to impose a tenant notification requirement on landlords.  That said, the Department generally supports amending the Rent Stabilization Ordinance to require notification requirements for tenants.

### 8.  *Translation*

The Director fielded several comments regarding the need for translation of the rules into various languages, and the need for translation services, generally.

*Director response*: efforts are underway to provide translation services to non-native English speaking tenants, landlords, and other members of the public.