# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Woodstone Limited Partnership; Lofts at Farmers Market LLC, <br><br> Plaintiffs, <br><br> v. <br><br> City of Saint Paul, Minnesota, a Minnesota Charter City; City Council of the City of Saint Paul; Angie Wiese, in her official capacity as the Director of the Department of Safety and Inspections of the City of Saint Paul; Mayor Melvin Carter, in his official capacity as Mayor of the City of Saint Paul; and John Doe, <br><br> Defendants. | Case No. 22-CV-1589 NEB-JFD <br><br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE BY KATHERINE BANBURY, ANGELA WILHIGHT, WESTSIDE COMMUNITY ORGANIZATION, ALLIANCE FOR METROPOLITAN STABILITY, HOME LINE** |

## INTRODUCTION

The Court should deny the motion to intervene filed by Katherine Banbury, Angela Wilhight, Westside Community Organization, Alliance for Metropolitan Stability, and HOME Line ("Proposed Intervenors"). In this lawsuit, Proposed Intervenors want to do the same thing the City of Saint Paul is already doing: try to defend the constitutionality of the Saint Paul Residential Rent Stabilization Ordinance (the "Ordinance"). Proposed Intervenors' interests here are subsumed in the City's interests. The City adequately represents their shared goal to uphold the Ordinance. Allowing Proposed Intervenors to intervene and argue the same points as the City will

add nothing of value. Proposed Intervenors' participation will only complicate the case and unfairly tip the scales by adding five new voices to echo the City's arguments.

Proposed Intervenors have no right to intervene under Federal Rule of Civil Procedure 24(a). According to binding precedent from the Eighth Circuit Court of Appeals, the City is presumed to adequately represent Proposed Intervenors' interests here. Proposed Intervenors provide no evidence to rebut the presumption. They may have strong feelings about the Ordinance and they may want a say in how this matter is litigated, but that does not justify their intervention. Proposed Intervenors' motion is also untimely and prejudicial to Plaintiffs. This lawsuit has been on the docket for four months and received media attention from the beginning. Yet the Proposed Intervenors waited to file a motion to intervene until after the parties negotiated an early summary judgment procedure, after Plaintiffs completed discovery pursuant to that stipulation, and after Plaintiffs filed their opening summary judgment brief. Adding Proposed Intervenors to the mix at this stage will undermine the efficiency and balance the parties sought to achieve by their stipulated procedure.

For similar reasons, Proposed Intervenors should not be permitted to intervene under Federal Rule of Civil Procedure 24(b). To paraphrase the Eighth Circuit, Proposed Intervenors' "answer to the complaint did not raise any claim or defense that was different from those of the existing parties" and, therefore, "the additional parties would only be a source of repetition and delay." *Standard Heating and Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 573 (8th Cir. 1998). Proposed Intervenors' motion to intervene should be denied.

# ARGUMENT

## I.  Proposed Intervenors Have No Right to Intervene Under Rule 24(a).

Proposed Intervenors have no right to intervene under Federal Rule of Civil Procedure 24(a). Rule 24(a)(1) does not apply because there is no statute that grants Proposed Intervenors an unconditional right to intervene. Proposed Intervenors rely on Rule 24(a)(2), but that rule does not apply, either. Rule 24(a)(2) states:

> Upon timely intervention anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To fall under this rule, Proposed Intervenors must show: (1) they have a recognized interest in the subject matter of this lawsuit; (2) that interest might be impaired by the disposition of the lawsuit; and (3) their interest is not adequately protected by the existing parties. *F.T.C. v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015). Proposed Intervenors must satisfy all three conditions to intervene as a matter of right. *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997). In addition to these three conditions, Proposed Intervenors must "timely" move to intervene. *Id.* Proposed Intervenors' motion falls short of the requirements for inadequacy of representation and timeliness.

### A. Proposed Intervenors' alleged interests are adequately represented by the City and its officials.

Assuming for the sake of argument that Proposed Intervenors have an interest in upholding the Ordinance at issue in this case,[1] their motion to intervene fails because the City and its officials adequately represent the same interest. *See North Dakota ex rel. Stenehjem v. U.S.*, 787 F.3d 918, 921 (8th Cir. 2015) ("Even assuming for the sake of argument that the Groups could meet the first two criteria, we conclude that the Groups have failed to show that the United States does not adequately represent their interests . . . ."). Although the burden of showing inadequate representation is usually "minimal," "the burden is greater if the named party is a government entity that represents interests common to the public." *Little Rock Sch. Dist. v. North Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). Courts in the Eighth Circuit "presume that the government adequately represents the public." *Id.* A proposed intervenor in an action involving the government is required "to make a strong showing of inadequate representation." *Id.*

Absent evidence of "clear dereliction of duty," a proposed intervenor cannot meet its burden of showing inadequate representation merely because it disagrees with the government's litigation strategy. *Chiglo*, 104 F.3d at 188. The fact that a proposed intervenor "has asserted its interest with arguably greater fervor than has the state and

---

[1] Some case law suggests that Proposed Intervenors do not have a recognized interest in this lawsuit. *See, e.g.*, *Curry v. Regents of University of Minnesota*, 167 F.3d 420, 423 (8th Cir. 1999) ("The Movants' economic interest in upholding the current fee system simply does not rise to the level of a legally protectable interest necessary for mandatory intervention."). But Plaintiffs need not debate that issue in depth because Proposed Intervenors' interests, if any, are adequately represented by the City.

4

would have made different procedural choices, including a decision to appeal, does not make its interest distinct." *Little Rock Sch. Dist.*, 378 F.3d at 780.

The government's need to balance the interests of various constituents is also insufficient to justify intervention. *South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 786 (8th Cir. 2003). "A merely theoretical risk of conflicting legal duties does not render the government unable to adequately protect the" proposed intervenor's interests in a lawsuit. *Id.* The proposed intervenor must "set forth specific interests that only it can protect by intervening." *Id.*

When the government and the proposed intervenors seek the same outcome, albeit for different reasons, intervention is properly denied. *Johnson*, 800 F.3d at 452; *Stenehjem*, 787 F.3d at 921-22; *Curry*, 167 F.3d at 423; *McLean v. State of Ark.*, 663 F.2d 47, 48 (8th Cir. 1981) ("[T]he Attorney General of Arkansas will properly defend the validity of Act 590."); *Leech Lake Area Citizens Committee v. Leech Lake Band of Chippewa Indians*, 486 F.2d 888, 889 (8th Cir. 1973) ("The present motion to intervene raises no new matters."); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) ("Defendants and Movants share the same ultimate objective: to uphold NGEA against constitutional attack. . . . Parsing the ends of the statute from the means does not create a unique interest.").

In *Curry v. Regents of University of Minnesota*, 167 F.3d 420 (8th Cir. 1999), the Eighth Circuit Court of Appeals affirmed this Court's decision to deny intervention in analogous circumstances. In *Curry*, a group of students sued the University of Minnesota, claiming the school violated their constitutional rights by using student fees to fund three

5

organizations whose missions the plaintiffs opposed. *Id.* at 421. The three organizations who received the funding (the "Movants") moved to intervene, but their motion was denied, and the denial of their motion was affirmed on appeal. *Id.* at 421-22. The Eighth Circuit decided the Movants' interests were adequately represented by the University. *Id.* at 423. The court explained that, "although the Movants' motives may be distinguishable from the University's, the Movants' and the University's interests are the same: both want the current fee system upheld." *Id.* The court continued, "[a]lthough the Movants assert that the University does not share their speech and economic interests, the University's interest in defending the mandatory student fee system that has been created to support student organizations encompasses the Movants' asserted interests." *Id.*

In *Standard Heating and Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567 (8th Cir. 1998), the court affirmed this Court's denial of a motion to intervene in a lawsuit challenging the constitutionality of a Minneapolis ordinance. The ordinance at issue imposed certain requirements related to licensing, wages, and employment conditions on the heating and cooling, refrigeration, plumbing, and gas trades. *Id.* at 569-70. Three trade groups sought to intervene to defend the regulations, arguing the ordinance benefited their members. *Id.* at 572. But in rejecting their motion to intervene, the court decided the City of Minneapolis shared the trade groups' interests in upholding the ordinance, and they "both take the same position in the litigation." *Id.* The specific impact of the ordinance on the groups' job safety and costs was not enough to give them a right to intervene: "costs arising from on the job injury are the type of costs the government seeks to reduce with its regulatory system." *Id.*

Proposed Intervenors' motion should be denied for similar reasons. As in *Standard Heating and Air Conditioning*, Proposed Intervenors take the same position and have the same objective as the City in this case: uphold the Ordinance. 137 F.3d at 572. Proposed Intervenors may have a financial stake in keeping rents down in Saint Paul, but the City apparently has the same interest. *See id.* Their interests in the litigation are totally aligned in that regard.

Proposed Intervenors cannot show any "dereliction of duty" by the City to enforce or defend the Ordinance, as needed for Proposed Intervenors to have a right to intervene. *Chiglo*, 104 F.3d at 188. Because Saint Paul voters adopted the Ordinance by initiative, the original version of the Ordinance needs to remain in effect for at least one year. St. Paul Code § 8.06. The City has been enforcing this version of the Ordinance, to landlords' detriment, since it first became effective in May 2022. The City's records show it has denied <u>90%</u> of landlords' staff-determination applications to increase rent by more than 8%. (Dkt. 37, Ex. 11, Ans. to Interr. Nos. 5, 7.) After the one-year anniversary of the voters' approval of the Ordinance, the City Council has authority to repeal the Ordinance, but the Council has already chosen not to do that. Instead, the Council approved amendments to the Ordinance that will go into effect in January 2023. There is no evidence that the City will refuse to enforce or defend any version of the Ordinance, much less the amended Ordinance that the City Council itself drafted and adopted.

Proposed Intervenors argue that the amendments reflect the City's attempt to balance the interests of housing developers with the interests of rent control advocates, like Proposed Intervenors, but that is a complaint about the legislative process that led to

7

the amendments, not a complaint about the City's legal defense of the Ordinance. The City has shown in this case that it is prepared to defend the Ordinance, both as originally written and as recently amended. (*See* Dkt. 10 (Defendants' Answer).) Although the City's motives may be different from Proposed Intervenors, in that Proposed Intervenors are arguing only for themselves and not the entire City, they both want the same outcome in this lawsuit: a decision upholding the constitutionality of the Ordinance. As in *Curry*, the City's interest in defending the Ordinance "encompasses" Proposed Intervenors' alleged interests. 167 F.3d at 423.

Proposed Intervenors' speculation that the City may not appeal if this Court strikes down the Ordinance is both unfounded and legally insufficient to justify intervention. The possibility that, at some point down the road, the Proposed Intervenors would make "different procedural choices, including a decision to appeal, does not make [their] interest distinct" from the City's interest. *See Little Rock Sch. Dist.*, 378 F.3d at 780. Proposed Intervenors must show something more than a "mere [possible future] failure to appeal. *See Chiglo*, 104 F.3d at 188.

Proposed Intervenors' reference to the *Lamplighter* case goes nowhere. In that case, after Judge Magnuson enjoined enforcement of a different Saint Paul ordinance related to rental applications and evictions, the Saint Paul City Council decided to repeal the ordinance. The City's actions following the *Lamplighter* case do not necessarily provide a roadmap for how the City will act in this case, which involves a different ordinance. But even if the City repeated the exact same process here, that would not support Proposed Intervenors' motion. If the City were to repeal the Ordinance, as it

8

repealed the ordinance at issue in *Lamplighter*, the parties' and Proposed Intervenors' arguments about the constitutionality of the Ordinance would become almost entirely moot. All that would remain of the litigation would be Plaintiffs' claims for monetary compensation under the Taking Clause and Section 1983, which do not implicate Proposed Intervenors' interests.

The other cases Proposed Intervenors cite on this issue are easily distinguished. In two cases, *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) and *South Dakota v. Ubbelohde*, 330 F.3d 1295 (8th Cir. 2003), the plaintiff challenged a government agency's administrative actions that necessarily balanced the plaintiff's and intervenors' competing interests. The plaintiff did not challenge the <u>constitutionality</u> of a law that the government, like the intervenors, was fighting to uphold. Moreover, in both cases, there was specific <u>evidence</u> that the government agency had failed to enforce the law or otherwise failed to defend the intervenors' interests. *See Mausolf*, 85 F.3d at 1303 ("It is unquestioned that, in the past, the Government has waived and failed to enforce regulations against snowmobile use in the Park."); *Ubbelohde*, 330 F.3d at 1025 ("The very crux of this suit is that the Corps has failed in its representative role.").[2] No such evidence exists here. Another case Proposed Intervenors extensively cite, *Perry v. Brown*,

---

[2] In several cases, courts have distinguished *Mausolf* on these grounds and denied motions to intervene. *See, e.g.*, *Stenehjem*, 787 F.3d at 922: "This lawsuit . . . does not concern administrative decisions about how the Grasslands should be managed or used. The Group's argumenta about its history of land use disputes with the United States is therefore beside the point."); *Chiglo*, 104 F.3d at 188 (deciding there was no evidence that the City of Preston waived or failed to enforce the regulations at issue while they were in effect, unlike in *Mausolf*).

9

265 P.3d 1002 (Cal. 2011), is a California case about individual citizens' standing to defend the constitutionality of a ballot initiative "<u>when the public officials charged with that duty refuse to do so</u>." *Id.* at 1005 (emphasis added). Again, there is no evidence that the City of Saint Paul will "refuse" to defend the constitutionality of the Ordinance, especially the amended version of the Ordinance that the City Council adopted. The City adequately represents Proposed Intervenors' interest in upholding the Ordinance, so they do not have a right to intervene.

### B. The Proposed Intervenors' motion is untimely and prejudicial.

Proposed Intervenors' motion to intervene should also be denied as untimely. *See* Fed. R. Civ. P. 24(a) ("Upon <u>timely</u> intervention . . ." (emphasis added)). Whether a motion to intervene is timely depends on the circumstances of the case. *Kansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985). Factors to consider include: (1) how far the litigation progressed before the motion to intervene was filed; (2) the proposed intervenor's prior knowledge of the case; (3) the reason for any delay in seeking intervention; and (4) the likelihood of prejudice to the existing parties if intervention is allowed. *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995).

Proposed Intervenors did not timely move to intervene in this case. Plaintiffs publicly filed this lawsuit over four months ago, on June 16, 2022. The St. Paul Pioneer Press ran a story about the lawsuit the very next day. Frederick Melo, *Property owners file federal lawsuit over St. Paul rent control*, Pioneer Press, June 17, 2022, *available at* https://www.twincities.com/2022/06/17/st-paul-rent-control-federal-lawsuit/. Proposed

10

Intervenors either knew about or easily could have discovered this lawsuit, and its potential impact on them, months ago.

During this time, the lawsuit has progressed significantly. The parties engaged in a Rule 26(f) conference on July 26 and filed a joint Rule 26(f) Report on August 10. (Dkt. 13.) The parties attended a scheduling conference with Magistrate Judge Docherty on August 17. (Dkt. 19.) On August 23, the parties filed a Joint Request for Permission to File Early Summary Judgment Motions and Stipulation for Motion Procedure, which the Court approved on August 23. (Dkt. 21, 23.) As part of this stipulated procedure, the parties agreed that the City would respond to limited discovery requests by September 12, Plaintiffs would then file their opening brief by October 17, and the remaining briefing would flow from there. Both sides get an equal number of briefs (two) and total words (24,000) to make their arguments. (Dkt. 21.)

It is too late for Proposed Intervenors to jump into the case now, even if they could meet the other requirements of Rule 24(a). *See Kansas Elec. Energy Consumers*, 772 F.2d at 403 (affirming denial of motion to intervene, filed just 12 days after lawsuit started, because "a substantial amount of the litigation had been completed during these twelve days"); *Kassover v. Computer Depot, Inc.*, 691 F. Supp. 1205, 1210 (D. Minn. 1987) (denying motion to intervene filed after the opposing party had already taken discovery and moved for summary judgment based on that discovery). Indeed, allowing Proposed Intervenors to join the case at this stage would be prejudicial and unfair to Plaintiffs. Plaintiffs have already filed their summary judgment brief, in part based on discovery taken from the City. Plaintiffs have not had an opportunity to take discovery

11

from Proposed Intervenors, and they should not have to delay the entire agreed-upon summary judgment procedure, and potentially revise and refile their opening brief, just to accommodate the Proposed Intervenors' belated desire to participate. Moreover, including Proposed Intervenors will potentially double the briefing Plaintiffs will need to respond to, contrary to the balanced approach set forth in the parties' stipulation.

Before Proposed Intervenors filed their motion, the parties had started down an agreed-upon path to efficiently and fairly resolve most of the issues in this case. Proposed Intervenors cannot simply slide into the case now without disrupting and delaying the process. Proposed Intervenors have no right to intervene because their motion is untimely and prejudicial, and their interests are adequately represented by the City anyway.

## II. Proposed Intervenors Should Not Be Permitted to Intervene Under Rule 24(b).

Proposed Intervenors should not be permitted to intervene under Federal Rule of Civil Procedure 24(b). Rule 24(b)(1) does not apply because no statute gives Proposed Intervenors a conditional right to intervene in this case. Proposed Intervenors are left to rely on Rule 24(b)(2), which states: "Upon timely intervention anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." In deciding a motion for permissive intervention, the court considers: (1) whether the motion was timely; (2) whether the proposed intervenor has a claim that raises a question of law or fact in common with the existing action; and (3) whether intervention will unduly delay or prejudice the existing

parties. *Heydinger*, 288 F.R.D. at 429. The court can also consider whether the current parties adequately represent the proposed intervenor's interests. *Barnett*, 317 F.3d at 787.

Proposed Intervenors should be denied permissive intervention because, as explained above, their motion is untimely, their intervention will unduly delay and prejudice Plaintiffs, and the City adequately represents Proposed Intervenors' interests. This Court said it best when it denied permissive intervention in the *Heydinger* case:

> Movants' stated objective – to uphold the constitutionality of the statute – is indistinguishable from that of Defendants. . . .
>
> . . .
>
> Given the parallel goals and defenses of Defendants and Movants, combined with Defendants' demonstrated willingness and capacity to present those defenses, the resolution of this case will not be enhanced in any significant way through the permissive intervention of Movants. Rather, **adding seven additional parties to duplicate arguments would only be a source of repetition and delay, and complicate the proceedings without advancing additional rights**.

*Heydinger*, 288 F.R.D. at 430-31 (emphasis added). The Court may as well have been describing this case.

If Proposed Intervenors are allowed to participate in this case, this case will become a mess. Surely, Proposed Intervenors are not the only non-parties who have an opinion about this case or will be affected by its outcome. Should all the 30,965 Saint Paul residents who voted for the Ordinance, each of which has the same "interest" as Proposed Intervenors, be allowed to join? (*See* Dkt. 45-2 at 17 (arguing that Proposed Intervenors represent "the thousands of citizens who voted for the rent stabilization Ordinance).) What about the 27,851 Saint Paul residents who voted against the Ordinance

or the numerous developers, landlords, and trade groups who voiced their objections to it? Can they participate as well, on Plaintiffs' side of the caption?

The point is, Proposed Intervenors are not as unique as they claim. A line has to be drawn, and it is appropriate to draw that line at the existing parties to the case. The existing parties adequately represent the interests of curious onlookers, and they will more fairly and efficiently resolve this matter without opening the door to Proposed Intervenors or anyone else who claims an interest in the subject matter. Proposed Intervenors' request for permissive intervention should be denied.

### III. If the Court Allows Intervention, Proposed Intervenors' Participation Should Be Limited.

Although the Court should deny Proposed Intervenors' motion outright, if the Court allows any form of intervention, it should be severely limited. Proposed Intervenors should not be allowed to file briefs, argue at any hearings, or otherwise actively participate in this case unless and until the Court strikes down the Ordinance and the City chooses not to appeal. At that point, Proposed Intervenors can step in and appeal. *See Snell v. Allianz Life Ins. Co. of N. Am.*, 327 F.3d 665, 670 (8th Cir. 2003) (affirming the grant of intervention for the limited purpose of appealing "and no other"); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1432 (D. Minn. 1993) (allowing intervention "solely for purposes of preserving their rights to appeal").

Such a limitation will strike an appropriate balance. Limiting Proposed Intervenors' participation, but allowing them to appeal if necessary, should satisfy Proposed Intervenors' supposed concern (however unfounded) that the City will not seek

to uphold the Ordinance on appeal. Limiting Proposed Intervenors in this way will also eliminate the need to delay or altogether scrap the parties' stipulated summary judgment procedure that has already begun, and avoid the potential for Proposed Intervenors and the City to double-team Plaintiffs with unfair and unnecessary extra briefing and argument. Absent such limitations, Proposed Intervenors' motion is inappropriate and should be denied for all the reasons set forth above.

## CONCLUSION

Proposed Intervenors have no right to intervene under Rule 24(a), and they should not be permitted to intervene under Rule 24(b). The Court should deny their motion to intervene.

Dated:  October 27, 2022

**ANTHONY OSTLUND LOUWAGIE DRESSEN & BOYLAN P.A.**

 *s/ Philip J. Kaplan*
Joseph W. Anthony (#2872)
janthony@anthonyostlund.com
Philip J. Kaplan (#389351)
pkaplan@anthonyostlund.com
Kathryn E. Campbell (#402631)
kcampbell@anthonyostund.com
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  (612) 349-6969

**ATTORNEYS FOR PLAINTIFFS**