# UNITED STATES DISTRIC COURT
## DISTRICT OF MINNESOTA

Case No. 22-cv-1589 NEB-JFD

Woodstone Limited Partnership;
Lofts at Farmers Market LLC,

Plaintiffs,

v.

City of Saint Paul, Minnesota, a Minnesota
Charter City; City Council of the City of
Saint Paul; Angie Wiese, in her official
capacity as the Director of the Department
of Safety and Inspections of the City of
Saint Paul; Mayor Melvin Carter, in his
official capacity as Mayor of the City of
Saint Paul; and John Doe,

Defendants

And

Katherine Banbury, Angela Wilhight,
Westside Community Organization,
Alliance for Metropolitan Stability,
HOME line,

Defendant-Intervenors

Amicus  Memorandum of Katherine
Banbury, Westside Community
Organization, Alliance for
Metropolitan Stability and
HOME Line in support of Defenants'
Motion For Summary Judgment

## INTRODUCTION

Amici support the position of the City of St. Paul in opposing the Plaintiffs'

Motion for partial summary judgment and seeking summary judgment on all of

Plaintiffs' claims.  Amici seek to assist the Court by: raising three questions

regarding the justiciability of Plaintiffs' claims for summary judgment; adding

1

legal support to the City's arguments regarding Plaintiffs' takings and contract

clause claims; and adding factual material supporting the City's argument for

summary judgment on Plaintiffs' due process claim.  Amici will provide this

information without duplicating material presented in the City's Summary

Judgment Memorandum.

## ARGUMENT

**I.      The Plaintiffs' summary judgment motion raises issues regarding
        the justiciability of at least some of their claims.**

A substantial portion of the Plaintiffs' Memorandum in support of their

substantive due process claim is based on the provisions of the City's Amended

Ordinance, adopted on September 21, 2022, and effective January 1, 2023, rather

than on the Ordinance adopted by voters, currently in effect, and the actual subject

of Plaintiffs' complaint.  The "purposes of the Ordinance" cited in the subsection

of the Plaintiffs' Memorandum subtitled "The Ordinance does not substantially

advance its stated purposes" are purposes set out in the Amended Ordinance, not

the current Ordinance.  Plaintiffs' Memorandum at 18.  Plaintiffs argue that the

Amended Ordinance: does not ensure rental affordability (*Id.* at 20); does not go

far enough to lure developers back to the city (*Id.* at 21); fails to address

detrimental impacts of a shortage of rental housing (*Id.*); does not address tenant

hardships (*Id.*); and is not rationally related to stabilizing rents *(Id.* at 22).

Further, the declaratory judgment and injunction relief requested in the Plaintiffs' Proposed Order exclusively address the Amended Ordinance, rather than the Ordinance as it currently exists and as it was when the Plaintiffs' Complaint was filed.

Plaintiffs have not sought leave to file a supplemental complaint, addressing the provisions of the Amended Ordinance, as required by Fed. R. Civ. P. Rule 15(d).  The subject of the Amended Ordinance is therefore not before the Court. There is no basis before the court for summary judgment arguments regarding provisions of the Amended Ordinance and no basis for issuance of the proposed order.

A related issue is that the Amended Ordinance exempts property constructed within the twenty years prior to the rent increase. §§ 193A.03(q); 193A.08(a)(3).[1] But the Lofts at Farmers Market was "developed and built in approximately 2011-2012."  Plaintiffs' Complaint, Par. 68. The Amended Ordinance therefore will have no effect on the Lofts at Farmers Market.  Plaintiff Lofts at Farmers Market LLC can therefore show no injury in fact resulting from the Amended Ordinance and lacks standing to bring any claims based on the Amended Ordinance. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[1] At: https://stpaul.legistar.com/LegislationDetail.aspx?ID=5741696&GUID=6AF3506E-0278-4800-9DA3-53D150769610&FullText=1

Finally, Plaintiffs lack standing to assert Count V of their Complaint.

Plaintiffs claim that the City rule limiting exceptions to the Ordinance to a 15%

increase in any year somehow violates Minn. Stat. § 471.9996.  In support of the

City's argument for summary judgment on this claim, Amici would note that

Plaintiffs' Complaint sets out no facts indicating that either Plaintiff has suffered

an "actual or imminent, not 'conjectural' or 'hypothetical' injury" as a result of the

15% limit.  Both plaintiffs therefore lack standing with respect to this claim.  *See*

*Lujan*, 504 U.S. at 560.

## II.     Plaintiffs' Complaint provides no factual support for a regulatory takings claim.

In support of the City's arguments regarding the Plaintiffs' regulatory

takings claim, Amici would add the following argument.  A regulatory taking

claim requires "ad hoc, factual inquiries, designed to allow careful examination

and weighing of all the relevant circumstances."  *Murr v. Wisconsin*, 137 S. Ct.

1933, 1942 (2017) (quotation omitted).  Adjudication of such cases requires

balancing a plaintiff's interest in property with the government's "well established

power to 'adjust rights for the public good.'"  *Id.* at 1943 (quoting *Andrus v. Allard*,

444 U.S. 51, 65 (1979)).  This balancing "requires a careful inquiry informed by

the specifics of the case."  *Id.*

The Plaintiffs' Complaint fails, on these grounds, to allege a regulatory

taking.  Their Complaint includes only vague assertions, lacking any specific facts,

4

about past increases in expenses and need to increase rents. It is devoid of any facts which would support a current or future need by either Plaintiff to increase rents beyond 3%, let alone the 8% permitted by the City rules with only a simple self-certification.  There are no facts indicating that the Ordinance's guarantee of a reasonable return to Plaintiffs or the City regulation's provision for maintenance of Net Operating Income in the Plaintiffs' buildings are insufficient to provide a reasonable return on Plaintiffs' investments.  There are no facts describing the purported effects of the Ordinance on Plaintiffs' returns or Net Operating Income. There is nothing in the Complaint permitting factual inquiries which would lead to a "weighing of all the relevant circumstances" or a "careful inquiry informed by the specifics of the case."

The Supreme Court has held that the Federal Rules of Civil Procedure mandate entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiffs' takings claim is thus subject to summary judgment.

### III.   There can be no Contract Clause violation because the Rent Stabilization Ordinance cannot have a retroactive effect.

In support of the City's argument that current leases are not affected by the Ordinance, Amici would note that under Minnesota law and the St. Paul Code of

Ordinances, the Ordinance is not permitted a retroactive effect. Minnesota Statutes § 645.21 provides that "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Under Minnesota case law, statutes are presumptively prospective, not retroactive and, for a statute to be construed to have a retroactive effect, the language of the statute must contain clear evidence of retroactive intent, such as mention of the word "retroactive." *Sletto v. Wesley Construction, Inc*., 733 N.W.2d 838, 42 (Minn. App. 2007. The St. Paul Code of Ordinances in turn provides that "[u]nless clearly in conflict with the provisions of this Code, or for some other reason clearly inapplicable, rules of construction established for the State of Minnesota by statutes, . . . shall apply in the construction of this Code." St. Paul, Minn., Legislative Code § 2.15. There is no indication, let alone any clear evidence, that the Ordinance was intended to be interpreted retroactively and thus it necessarily operates prospectively only. Any leases executed prior to the effective date of the Ordinance are therefore unaffected by the Ordinance and, as the City's Memorandum clearly demonstrates, any effect of the Ordinance on leases executed subsequent to the effective date cannot be Contract Clause violations.

## IV.   Factual support for the City's motion for summary judgment on Plaintiffs' substantive due process claim.

Plaintiffs assert they have demonstrated that the Ordinance is arbitrary because it "does not substantially advance its goals" and instead "does nothing at

6

all for low income tenants," decreases affordable housing, and does nothing to prevent tenants' loss of housing. Plaintiffs' Memorandum at 18. Amici submit the following facts demonstrating that this Ordinance, and rent control in general, does in fact protect low income tenants and prevent their displacement as a result of rent increases.

The experience of Amicus Katherine Banbury demonstrates the effectiveness of the Ordinance. Her building is funded with federal Low Income Housing Tax Credits (LIHTC), and occupancy is limited to low-income households. Rents in this program are limited based on area median income. Ms. Banbury's landlord owns eight LIHTC buildings in St. Paul and many more throughout the metro area. In metro areas outside of St. Paul, the landlord raised rents 11.9%, as was permitted by the LIHTC rules. These rent increases have resulted in the threatened displacement of a number of low income, mostly elderly, residents.[2] Ms. Banbury, and all of the tenants of the landlord's other seven LIHTC buildings in St. Paul have benefitted from the Ordinance as the landlord is permitted not more than an 8% rent increase using the self-certification provision. Ms. Banbury has been further protected by the Ordinance as she appealed the landlord's self-certification of an 8% rent increase. City rules prevented the

---

[2] *See* Chris Serres, *Minnesota Seniors Strike Back Against Soaring Rents*, Star Trib., Oct. 8, 2022.

increase from going into effect until her appeal was resolved.   The City Council adopted the Hearing Officers recommendation that her rent increase be limited to 6.1% at its October 19, 2022, meeting.  Since then, the landlord has applied that limit to all of the apartments in Ms. Banbury's building and is providing a rebate for rents paid in excess of the 6.1% increase.

The academic study of a San Francisco rent control ordinance repeatedly relied upon by Plaintiffs at paragraphs 54, 57-60 of the Complaint provides results indicating that rent control does in fact further the purposes of maintaining affordable rent levels and preventing displacement through rent increases:

> We find that, on average, in the medium to long term the beneficiaries of rent control are between 10 and 20 percent more likely to remain at their 1994 address relative to the control group and, moreover, are more likely to remain in San Francisco. Further, we find the effects of rent control on tenants are stronger for racial minorities, suggesting rent control helped prevent minority displacement from San Francisco. All our estimated effects are significantly stronger among older households, . . .

Rebecca Diamond, Tim McQuade & Franklin Qian, *The Effects of Rent Control Expansion on Tenants, Landlords, and Inequality Evidence from San Francisco*, 109 Am. Econ. Rev. 3365, 3393 (2019).

Finally, a January 21, 2022, analysis by the Harvard Joint Center for Housing Studies found a dramatic 20.5% reduction in the number of affordable rental housing units in Minnesota between 2011 and 2019, equating to a loss of

more than 35,000 units.[3]  Stemming this loss of affordable housing through rent stabilization, as the St. Paul Ordinance does, is a rational approach to the legitimate objective of preserving the supply of affordable housing.

## CONCLUSION

For the reasons set out above, Amici ask that the Court support the City's motion for summary judgment on all of Plaintiffs' claims.

Dated: November 28, 2022        **HOUSING JUSTICE CENTER**
/s John Cann_____
John Cann (#0174841)
1774 Portland Ave.,
St. Paul, MN 5514
651-645-7378
jcann@hjcmn.org
Margaret Kaplan (#0328601)
382 Banfil Street. St. Paul, MN 55102
612-600-4028
 mkaplan@hjcmn.org

Attorneys for Amici

---

[3] *Every State has Lost Low-Rent Units Since 2011*, Joint Center for Housing Studies of Harvard University, https://www.jchs.harvard.edu/loss-low-rent-units.

## CERTIFICATE OF COMPLAINCE

In compliance with Local Rule 7.1(f)(2), I certify that this memorandum was produced with a 14 point, Times-New Roman font, and  contains 1,743 words and complies with the requirements of LR 7.1(f) and LR 7.1(h).

Dated: November 28, 2022          **HOUSING JUSTICE CENTER**

/s John Cann

John Cann (#0174841)

1774 Portland Ave.,

St. Paul, MN 5514

651-645-7378

jcann@hjcmn.org

Attorney for Amici