# Exhibit 13



# City of Saint Paul

**Signature Copy**

**Ordinance: Ord 22-37**

City Hall and Court House
15 West Kellogg Boulevard
Phone: 651-266-8560

File Number:    Ord 22-37

Amending Chapter 193A of the Legislative Code pertaining to rent stabilization.

## SECTION 1

WHEREAS, on November 2, 2021, a majority of voters in the City of Saint Paul voted in favor of adopting the residential rent stabilization ordinance; and

WHEREAS, the purpose of the ordinance is to ensure affordability of rental housing in Saint Paul; address detrimental health, safety and welfare impacts resulting from a shortage of residential rental units; address the hardship tenants face when being forced to move from their homes; and stabilize rents in Saint Paul where rents outpace incomes; and

WHEREAS, according to data from the Department of Housing and Urban Development, there have been only two hundred (200) residential building permits in Saint Paul through April of 2022, compared to 1,391 at the same point in 2021; and

WHEREAS, according to census and forecast data published by the Metropolitan Council, the population in Saint Paul is since the year 2000 is outpacing the increase in new housing; and

WHEREAS, according to the Metropolitan Council Affordable Housing Production Survey, only 370 out of 2,073 new housing units in 2020 are affordable housing units; and

WHEREAS, according to American Community Survey data from 2015-2019, 36.8% of Saint Paul residents live below 185% of the federal poverty level; and

WHEREAS, prior to adoption, city partners expressed that passage of rent stabilization could increase the future financial risk on loans for executed redevelopment agreements which, in turn, could lead to developers pulling out of existing executed redevelopment agreements; and

WHEREAS, the development of new affordable housing in the City depends, in part, on Tax-Increment Financing (TIF) produced by the development of new market rate housing in general; and

WHEREAS, a decrease in development of new housing will decrease the availability of TIF and thus decrease the development of new affordable housing; and

WHEREAS, city partners have forecasted a loss of capital investment, relocation of developers and

builders to more predictable locations and asset types, negative impacts on housing supply, and long term increases to housing costs due to the rent stabilization ordinance; and

WHEREAS, a local bank has reported that a Naturally Occurring Affordable Housing development will not proceed because of passage of the rent stabilization ordinance, which reportedly caused a

reduction in value of approximately $1.1 million to the development; and

WHEREAS, a large non-profit affordable housing developer has reported over 500 affordable housing units will not be constructed as they are predicated on TIF funding from market rate projects which are indefinitely on hold due to the limitations of the current rent stabilization ordinance; and

WHEREAS, rent stabilization ordinances across the country include exemptions for new construction, including ordinances in effect in Berkeley, Oakland, and others; and

WHEREAS, the purpose of new construction exemptions in other jurisdictions is to address challenges similar to those faced by the City of Saint Paul, specifically housing shortages and accessibility to affordable housing; and

WHEREAS, the text of the rent stabilization ordinance finds that "that the welfare of all persons who live, work, or own Property in the City of Saint Paul depends in part ensuring that Saint Paul residents have access to affordable housing"; and

WHEREAS, consistent with the rent stabilization ordinance's stated goal of ensuring access to affordable housing, the City Council finds it necessary and reasonable to amend the Chapter to exempt new construction; and

WHEREAS, exempting new construction will help to ensure that city partners can continue to construct new affordable housing units in the City of Saint Paul; and

WHEREAS, the City has received numerous inquiries and complaints from residential tenants since the passage of the ordinance; and

WHEREAS, the ordinance, in its current form, does not specify a process by which tenants may file Complaints with the City; and

WHEREAS, the City Council desires to clarify the process by which tenants may seek redress of improper rent increases which exceed the cap increase in the ordinance, subject to exceptions and exemptions outlined in the ordinance; and

WHEREAS, the City Council desires to ensure that the rent stabilization ordinance does not dissuade the construction of new housing; and

WHEREAS, the City Council desires to balance tenant interests in housing security with the interests of landlords to adjust vacant units to competitive rates; and

WHEREAS, Complaints, Applications, and appeals filed with the City since the passage of the rent stabilization ordinance have demonstrated difficulties with implementing the rent stabilization ordinance; and

WHEREAS, Complaints, Applications and Appeals filed with the City since the passage of the rent stabilization ordinance have demonstrated that allowing rental increases above the ordinance cap can, in limited circumstances, increase the likelihood that landlords will invest in their property and

make improvements; and

WHEREAS, the Council may amend ordinances pursuant to Saint Paul charter; now, therefore, be it

RESOLVED, that the Council of the City of Saint Paul does hereby ordain:

## SECTION 2

Section 193A.01 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.01. Findings.

In order to retain or find adequate rental housing, many residents of the City of Saint Paul pay a substantial amount of their monthly income for rRent; that the present shortage of rResidential rRental uUnits and the prevailing rRent levels have a detrimental effect on the health, safety, and welfare of a substantial number of Saint Paul residents, particularly persons in low and moderate income households, and persons on fixed incomes who reside in the cCity; that residential tTenants constitute over fifty (50) percent of the residents in Saint Paul; that residential tTenants suffer great and serious hardship when forced to move from their homes; that the community is impacted by housing instability when rent increases outpace incomes; and that the welfare of all persons who live, work, or own pProperty in the cCity depends in part on ensuring that Saint Paul residents have access to affordable housing.

## SECTION 3

Section 193A.02 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.02. Authority.
Pursuant to Minn. Stat. § 471.9996, subd. 2, the cCity shall establish a policy limiting rent increases on rResidential rRental pProperties as approved in a general election.

## SECTION 4

Section 193A.03 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.03. Definitions.

Unless otherwise expressly stated, the following terms shall, for the purposes of this chapter, have the meanings indicated in this section:

> (a) *Building Certificate of Occupancy.* The certificate of occupancy issued under the Minnesota State Building Code, including temporary certificates of occupancy.
>
> (a)(b)  *Change of Tenancy*. A change in occupation of the Rental Unit from one tTenant to another tTenant.
>
> (b)(c)  *City*. The City of Saint Paul.
>
> I(d)  *Code*. The Saint Paul Code of Ordinances.

(e) *Complaint*. The process by which a Tenant requests the City to review a rent increase the Tenant believes is above an amount permitted by this chapter.

(f) *Consumer Price Index*. The measure of changes over time in prices for consumers of goods and services as published by the United States Department of Labor, Bureau of Labor Statistics.

(g) *Cure the Deficiency.* Cure the Deficiency means that a Tenant pays all monies rightfully owed to the Landlord, or fully complies with an order to correct a lease violation or notice to cease an activity that is in violation of a lease.

(h)  ~~*Deferred Rent Increase*. Deferred Rent Increase refers to a circumstance wherein a Landlord opts not to increase rent by up to three (3) percent in a given year, in accordance with Part II of the Code, Chapter 193A.04. Deferred Rent Increase is not limited to a deferral in one year.~~

~~(i)~~ (h) *Department.* The Saint Paul Department of Safety and Inspections.

~~(j)~~ (i)   *Department Determination*. The City's determination by the Department of Safety and Inspections of whether a Landlord's RROI Application has demonstrated justification for a Reasonable Return on Investment increase in rent of more than 3%.

~~(k)~~ (j) *Family Member.* A person's child, stepchild, adopted child, foster child, adult child, spouse, sibling, parent, step-parent, mother-in-law, father-in-law, grandchild, grandparent, or registered domestic partner as defined in section 186.02 of the Code or any individual related by blood or affinity whose close association with the property owner is the equivalent of a family relationship.

~~(f)(l)~~ (k) *Final Determination.* A Final Determination follows a Department Determination on an RROI Application or Complaint once the time has elapsed for the Tenant or Landlord to appeal to the Legislative Hearing Officer, or the Council has issued a decision following a recommendation from the Legislative Hearing Officer.

~~(d)(m)~~ (l) *Housing* ~~s~~Services. Housing ~~s~~Services include but are not limited to repairs, maintenance, painting, light, hot and cold water, elevator service, window shades and screens, storage units, kitchen, bath, and laundry facilities and privileges, janitorial services, utilities that are paid by the ~~l~~Landlord, refuse removal, furnishings, telephone services, vehicle parking spaces, the right to have a specified number of occupants, and any other benefit, privilege, or facility connected with the use or occupancy of any rental unit. Housing ~~s~~Services to a ~~r~~Rental ~~u~~Unit shall include a proportionate part of services provided to common facilities of the building in which the Unit is contained.

~~(n)~~ (m) *Just Cause Vacancy.* Just Cause Vacancy means any of the bases listed in Section 193A.0~~5~~6 ~~(a)(9)(b)(iii)~~ (b)(2) upon which a Landlord may terminate tenancy.

~~l(o)~~ (n)   *Landlord*. An owner of real property, a contract for deed vendee, receiver, executor, trustee, lessee, agent, or other person directly or indirectly in control of rental property.

~~(p)~~ (o) *Legislative Hearing Officer.* The individual who hears appeals pursuant to chapter 18 of the Code.

~~(f)(g)~~ (p)   *Local* ~~h~~Housing, ~~h~~Health, and ~~s~~Safety ~~c~~Codes. Any building, fire, housing, health, safety, or other similar code, law, or ordinance promulgated or enacted by the County of Ramsey and/or the City ~~of Saint Paul~~, or any lawful agency or department thereof, which is applicable to a building in such city. Local ~~h~~Housing, ~~h~~Health, and ~~s~~Safety ~~c~~Codes include, without any limitation on the foregoing sentence as a result of this specification, the provisions of chapters 33, 34, 43, 45, 49, 55, and 58 of the Code.

~~(r)~~ (q) *Newly Constructed.* Newly Constructed means that the Residential Rental Property was built from the ground up and was not classified for occupancy under the Minnesota

State Building Code or Minnesota Residential Code prior to issuance of the first Building Certificate of Occupancy.
- ~~(s)~~ (r) *Non-residential.* Any Property or portion of Property that has an occupancy classification other than residential under the Minnesota State Building Code or Minnesota Residential Code.

- ~~(t)~~ (s) *Pass Through Expense*. Expenses that a Landlord may recover from the Tenant on a pass through basis when the expense is directly attributable to the Tenant as approved in this Chapter. A Pass Through Expense shall not be considered Rent and the Landlord may not consider the Pass Through Expense as rental income or as an operating expense. ~~—~~
- ~~(u)~~ (t) *Property or Properties.* Property or Properties shall have the same meanings as the terms "building(s)" or "structure(s)" as defined in the Minnesota State Building Code and Minnesota Residential Building Code.
- ~~(v)~~ (u) *Reasonable Return on Investment (RROI) Application* or *Application* . The document(s) submitted by Landlords to receive a reasonable return on investment, as set forth in section 193A.06 of the Code. The RROI Application template shall be drafted and published by the City.
- ~~(g)~~~~(w)~~ (v) *Rent*. All monetary consideration charged or received by a ~~l~~Landlord concerning the use or occupancy of a ~~r~~Rental ~~u~~Unit pursuant to a Rental Agreement, except for Pass Through Expenses authorized by this Chapter.
- ~~(h)~~~~(x)~~ (w) *Rental ~~a~~Agreement*. An agreement, oral, written, or implied, between a Landlord and a Tenant for the use or occupancy of any Rental Unit.
- ~~(i)~~~~(y)~~ (x) *Residential ~~r~~Rental ~~u~~Unit, ~~r~~Rental ~~u~~Unit, or ~~u~~Unit*. Any dwelling unit, or portion of a dwelling unit, that is rented or otherwise made available for ~~r~~Rent for residential use or occupancy, together with all ~~h~~Housing ~~s~~Services connected with the use or occupancy of such property. This term shall not include the following:
  (1)   Rental ~~u~~Units which a government unit, agency, or authority owns, operates, or otherwise manages;
  (2)   Rental ~~u~~Units in hotels, motels, inns, tourist homes, or other similar establishment which are rented primarily to transient guests for a period of fewer than thirty (30) days;
  (3)   Rental ~~u~~Units or other accommodations provided by a church, chapel, synagogue, temple or other similar place of worship; and
  (4)   Hospitals, long-term care facilities or nursing homes licensed under Minnesota Statutes sections 144A.02 to 144A.10, boarding care homes licensed under sections 144.50 to 144.56, assisted living facilities or assisted living facilities with dementia care licensed under chapter 144G, or licensed or registered residential settings that provide or arrange for the provision of home care services.
- ~~(j)~~~~(z)~~ (y)   *Residential ~~r~~Rental ~~p~~Property* means a Property or a portion of a Property that is classified for occupancy as residential under the Minnesota State Building Code or Minnesota Residential Code . ~~Residential Rental Property shall have the same meaning as Residential Rental Unit, Rental Unit, or Unit as defined in section 193A.03(i) of the Code.~~
- ~~(aa)~~ (z)   *Single Metered Multiunit Residential Building.* A multiunit Residential Rental Property with one or more separate Rental Units where a utility service is measured through a single meter and provides service to an individual unit and to all or parts of common areas or other units.
- ~~(bb)~~ (aa) *Sub Metered Residential Building.* A Residential Rental Property with one or more separate Rental Units where a utility service has a separate meter which accurately measures the Rental Unit's use only.
- ~~(cc)~~ (bb)   *State*. The State of Minnesota.
- ~~(dd)~~ (cc)   *Substantially Equivalent Replacement Unit*. A dwelling unit which is decent, safe

and sanitary, contains at least the same number of bedrooms and other living areas as the displacement dwelling unit, and is available at a Substantially Similar Rental Rate within the neighborhood district of the displacement dwelling unit. Perfect comparability is not required.

(ee) (dd) *Substantially Similar Rental Rate*. The Rent that is no more than three (3) percent greater than or ten (10) percent less than a single month's Rent.

(k)(ff) (ee)   *Tenancy*. The right or entitlement of a tTenant to use or occupy a rRental uUnit under the terms of a rRental aAgreement.

(l)(gg) (ff) *Tenant*. A person who is occupying a rRental uUnit in a residential building under a rRental aAgreement that requires the payment of money or exchange of services, as well as other regular occupants of that uUnit.

(hh) (gg) *Termination of Tenancy*. The end of a tenancy following a written notice given by a Landlord to a Tenant requiring the Tenant to move, including nonrenewal of lease.

(ii) (hh) *Utilities*. Utilities shall include, but are not limited to natural gas, electricity, water service, and refuse and recycling removal.

SECTION 5

Section 193A.04 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.04. Limitation on rent increases.

No lLandlord shall demand, charge, or accept from a tTenant a rRent increase within a 12 month period that is in excess of three (3) percent of the existing monthly rRent for any rResidential rRental pProperty except as otherwise allowed under sections 193A.06 or 193A.08. Any Rent increase over three (3) percent made pursuant to section 193A.06 of the Code shall not take effect until a Final Determination is issued.

SECTION 6

Section 193A.05 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.05. - Vacancy.
(a) Vacancy not for just cause. The limitation on the amount of annual rRent increase shall apply -if there is a   regardless of cChange of oTenancy in a rResidential rRental uUnit -and the vacancy is not supported by just cause, except as otherwise allowed under sections 193A.06 or 193A.08.
(b) Just Cause Vacancy. Nothing in this subsection shall be interpreted or enforced to prevent a Landlord from refusing tenancy to a Tenant for a reason other than for just cause. The Just Cause provisions of this subsection apply only to Landlords seeking to increase Rent following a Just Cause Vacancy.
    (1) If the Landlord demonstrates to the Department that there is a Just Cause Vacancy, the limitation on a Rent increase set forth in 193A.04 shall not apply, and the Landlord may increase Rent in an amount not to exceet eight (8) percent plus the Consumer Price Index above the existing Rent.

(2) The following reasons shall constitute a Just Cause Vacancy:
   a. *Non-payment of Rent*. The Tenant fails to Cure the Deficiency after receiving a non-payment notice from the Landlord, and the Landlord does not pursue a valid non-payment eviction action under Minn. Stat. § 504B.291, subd. 1(a), but decides to terminate the tenancy at the end of the lease.
   b. *Repeated late payment of Rent*. The Tenant repeatedly makes *late* payments of Rent, no fewer than three (3) times in a twelve (12) month period. The Landlord must provide the Tenant with notice following a late payment that a subsequent late payment may be grounds for Termination of Tenancy. If the Tenant continues to make a late payment on no fewer than three (3) occasions per year, the Landlord must give the Tenant notice to vacate at least equal to the notice period outlined in the original Rental Agreement.
   c. *Material non-compliance*. After receiving a written notice to cease from the Landlord, the Tenant continues a material breach of the lease. This subsection shall not diminish the rights of a Landlord, if any, to terminate a lease for actions permitted under Minn. Stat. § 504B.281, et seq.
   d. *Substantial damage*. The Tenant has willfully caused or allowed substantial damage to the premises beyond normal wear and tear and has refused, after written notice, to pay the reasonable costs of repairing such damage and cease damaging the premises.
   ~~e. *Disorderly conduct*. The Tenant has continued, following written notice to cease, to be so disorderly as to destroy the peace and quiet of other Tenants or occupants of the premises or the Tenant is otherwise subject to eviction under Minn. Stat. 504B.281, et seq.~~
   e. *Refusal to renew*. The Tenant refuses to renew or extend the lease after the Landlord requests in writing that the Tenant do so. The Landlord shall give the Tenant notice to vacate at least equal to the notice period outlined in the original Rental Agreement following the Tenant's refusal to renew or extend the lease. This subsection shall in no way diminish the fifteen (15) to thirty (30) day notice period as required by Minn. Stat. 504B.145 for leases with automatic renewal provisions.
   f. *Occupancy by property owner or Family Member*. The property owner, in good faith, seeks to recover possession of the dwelling unit so that the property owner or a Family Member may occupy the unit as that person's principal residence. The property owner or Family Member must move into the unit within ninety (90) days from the Tenant's vacation. If a Substantially Equivalent Replacement Unit is vacant and available, that unit must be made available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.
   g. *Building demolition and dwelling unit conversion*.
      a. The Landlord elects to demolish the building, convert it to a cooperative, provided the Landlord complies with the provisions of Minn. Stat. Ch. 515B, or convert it to nonresidential use, provided that, the Landlord must obtain a permit necessary to demolish or change the use before terminating any tenancy;
      b. The Landlord seeks, in good faith, to recover the unit to sell it in accordance with a condominium conversion, provided the Landlord complies with the provisions of Minn. Stat. Ch. 515B; or

      c. The dwelling unit is being converted to a unit subsidized under a local, state or federal housing program and the Tenant does not qualify to rent the unit under that program.
    h. *Rehabilitation and renovation*. The Landlord seeks, in good faith, to recover possession of the dwelling unit that will render the unit uninhabitable for the duration of the rehabilitation or renovation. The Landlord must provide 90 days' written notice to the Tenant. If a Substantially Equivalent Replacement Unit is vacant and available in the building, that unit must be made available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.
    i. *Complying with a government order to vacate*. The Landlord is complying with a government agency's order to vacate, order to abate, or any other order that necessitates the vacating of the dwelling unit as a result of a violation of Saint Paul city codes or any other provision of law. If a Substantially Equivalent Replacement Unit is vacant and available in the building, that unit must be made available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.
    j. *Occupancy conditioned on employment at the Landlord's Property*. The Tenant's occupancy is conditioned upon employment by the Landlord on the Landlord's property and that employment relationship is terminated.

## SECTION 7

Section 193A.06 of the Saint Paul Legislative Code is hereby amended as follows:

Sec. 193A.06. Reasonable return on investment.

(a) The cCity shall establish a process by which lLandlords can request exceptions to the limitation on rRent increases based on the right to a reasonable return on investment. Rationale for deviations from the limitation on rRent increases must take into account the following factors:

  (1) Increases or decreases in property taxes;
  (2) Unavoidable increases or any decreases in maintenance and operating expenses, including fluctuations in the Consumer Price Index (CPI);
    a. Utilities. The Rental Agreement shall establish whether the Landlord or Tenant is responsible for paying each Utility.
      i. Single Metered Multiunit Residential Buildings. For Single Metered Mulitunit Residential Buildings, a Landlord seeking to impose utility payments as a Pass Through Expense under this Chapter must follow all conditions established in Minnesota Statutes section 504B.215, subdivision 2a.
        A. If the Landlord previously paid the Tenant's Utilities and the Landlord changes the Rental Agreement to require the Tenant to pay Utilities as a Pass Through Expense, the Landlord must decrease the Rent to account for the reduction of the utility operating expense.

    ii. <u>Sub Metered Residential Buildings. For Sub Metered Residential Buildings, the lease agreement may require the Tenant to contract with the utility service provider directly. If the Tenant pays the utility provider directly, the payment to the utility provider shall not be considered Rent.</u>

     A. <u>A Landlord in a Sub Metered Residential Building who pays a utility provider directly may impose utility payments as a Pass Through Expense to Tenants when the utility costs are directly attributable to the Tenant.</u>

     B. <u>If the Landlord previously paid the Tenant's Utilities and the Landlord changes the Rental Agreement to require the Tenant to pay Utilities directly to a provider, the Landlord must decrease the Rent to account for the reduction of the utility operating expense.</u>

(3) The cost of planned or completed capital improvements to the ~~r~~<u>R</u>ental ~~u~~<u>U</u>nit (as distinguished from ordinary repair, replacement and maintenance) <u>including but not limited to</u> ~~where such~~ capital improvements ~~are~~ necessary to bring the property into compliance or maintain compliance with applicable local code requirements affecting health and safety, and where such capital improvement costs are properly amortized over the life of the improvement;

(4) Increases or decreases in the number of tenants occupying the ~~r~~<u>R</u>ental ~~u~~<u>U</u>nit, ~~living space, furniture, furnishings, equipment, other housing services provided, or occupancy rules~~;

<u>(5) Increases or decreases in living space, furniture, furnishings, equipment;</u>

<u>(6) Increases or decreases in other Housing Services provided, or occupancy rules</u>;

~~(5)~~ <u>(7)</u> Substantial deterioration of the ~~r~~<u>R</u>ental ~~u~~<u>U</u>nit other than as a result of normal wear and tear;

~~(6)~~ <u>(8)</u> Failure on the part of the ~~l~~<u>L</u>andlord to provide adequate ~~h~~<u>H</u>ousing ~~s~~<u>S</u>ervices, or to comply substantially with applicable state rental housing laws, ~~l~~<u>L</u>ocal ~~h~~<u>H</u>ousing, ~~h~~<u>H</u>ealth, and ~~s~~<u>S</u>afety ~~c~~<u>C</u>odes, or the ~~r~~<u>R</u>ental ~~a~~<u>A</u>greement; and

~~(7)~~ <u>(9)</u> The pattern of recent ~~r~~<u>R</u>ent increases or decreases<u>.</u>

  a. ~~Patterns of Recent Rent Increases and Just Cause Vacancy. Nothing in this subsection shall be interpreted or enforced to prevent a Landlord from refusing tenancy to a Tenant for a reason other than for just cause. The just cause provisions of this subsection apply only to Landlords seeking to reset Rent following Deferred Rent Increases and a Just Cause Vacancy. The Landlord may apply to increase Rent pursuant to this section in an RROI Application and the RROI Application shall be approved, subject to sections b and c below.~~
  b. ~~When determining the pattern of recent Rent increases or decreases and Just Cause Vacancy, a Landlord may apply to increase rents subject to each of the following conditions:~~
    i. ~~The Landlord demonstrates Deferred Rent Increase over a period of time. Deferred Rent Increase may equal the maximum amount of increase a Landlord would have been entitled to had the Landlord increased Rent by~~

~~three (3) percent each year;~~
- ~~ii. Upon demonstrating Deferred Rent Increase, the Landlord may, subject to subsection iii., below, increase rents to an amount not to exceed the total demonstrated Deferred Rent Increase.~~
- ~~i. Approval of RROI Applications based on the pattern of Rent increases or decreases for a Deferred Rent Increase shall be provided only when the Landlord can demonstrate that a Tenant has vacated a unit for just cause. The following reasons for vacancy constitute just cause:~~
  - ~~A. *Non-payment of Rent*. The Tenant fails to Cure the Deficiency after receiving a non-payment notice from the Landlord, and the Landlord does not pursue a valid non-payment eviction action under Minn. Stat. § 504B.291, subd. 1(a), but decides to terminate the tenancy at the end of the lease.~~
  - ~~B. *Repeated late payment of Rent*. The Tenant repeatedly makes *late* payments of Rent, no fewer than three (3) times in a twelve (12) month period. The Landlord must provide the Tenant with notice following a late payment that a subsequent late payment may be grounds for Termination of Tenancy. If the Tenant continues to make a late payment on no fewer than three (3) occasions per year, the Landlord must give the Tenant notice to vacate at least equal to the notice period outlined in the original Rental Agreement.~~
  - ~~C. *Material non-compliance*. After receiving a written notice to cease from the Landlord, the Tenant continues a material breach of the lease. This subsection shall not diminish the rights of a Landlord, if any, to terminate a lease for actions permitted under Minn. Stat. § 504B.281, et seq.~~
  - ~~D. *Substantial damage*. The Tenant has willfully caused or allowed substantial damage to the premises beyond normal wear and tear and has refused, after written notice, to pay the reasonable costs of repairing such damage and cease damaging the premises.~~
  - ~~E. *Disorderly conduct*. The Tenant has continued, following written notice to cease, to be so disorderly as to destroy the peace and quiet of other Tenants or occupants of the premises or the Tenant is otherwise subject to eviction under Minn. Stat. 504B.281, et seq.~~
  - ~~F. *Refusal to renew*. The Tenant refuses to renew or extend the *lease* after the Landlord requests in writing that the Tenant do so. *The* Landlord shall give the Tenant notice to vacate at least equal to notice period outlined in the original Rental Agreement following the Tenant's refusal to renew or extend the lease. This subsection shall in no way diminish the fifteen (15) to thirty (30) day notice period as required by Minn. Stat. 504B.145 for leases with automatic renewal provisions.~~
  - ~~G. *Occupancy by property owner or Family Member*. The property owner, in good faith, seeks to recover possession of the dwelling unit so that the property owner or a Family Member may occupy the unit as that person's principal residence. The property owner or Family Member must move into the unit within ninety (90) days from the Tenant's vacation. If a Substantially Equivalent Replacement Unit is vacant and available, that unit must be made~~

~~in~~

~~to~~

~~available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.~~
  - ~~H. **Building demolition and dwelling unit conversion.**~~
    1. ~~The Landlord elects to demolish the building, convert it to a cooperative, provided the Landlord complies with the provisions of Minn. Stat. Ch. 515B, or convert it to nonresidential use, provided that, the Landlord must obtain a permit necessary to demolish or change the use before terminating any tenancy;~~
    2. ~~The Landlord seeks, in good faith, to recover the unit to sell it accordance with a condominium conversion, provided the Landlord complies with the provisions of Minn. Stat. Ch. 515B; or~~
    3. ~~The dwelling unit is being converted to a unit subsidized under a local, state or federal housing program and the Tenant does not qualify to rent the unit under that program.~~
  - ~~I. **Rehabilitation and renovation.** The Landlord seeks, in good faith, recover possession of the dwelling unit that will render the unit uninhabitable for the duration of the rehabilitation or renovation. The Landlord must provide 90 days' written notice to the Tenant. If a Substantially Equivalent Replacement Unit is vacant and available in the building, that unit must be made available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.~~
  - ~~J. **Complying with a government order to vacate.** The Landlord is complying with a government agency's order to vacate, order to abate, or any other order that necessitates the vacating of the dwelling unit as a result of a violation of Saint Paul city codes or any other provision of law. If a Substantially Equivalent Replacement Unit is vacant and available in the building, that unit must be made available to the Tenant at a Substantially Similar Rental Rate as the Tenant's current lease.~~
  - ~~K. **Occupancy conditioned on employment at the Landlord's Property.** The Tenant's occupancy is conditioned upon employment by the Landlord on the Landlord's property and that employment relationship is terminated.~~
- ~~c. For purposes of application approvals under this subsection:~~
  - i. ~~A facial showing of both 1) Deferred Rent Increase, and 2) a subsequent Just Cause Vacancy of a Rental Unit is sufficient to approve the application absent any other factors considered in reasonable return on investment;~~
  - ii. ~~A non-incumbent Tenant signing a lease after the Final Determination of the application has no right to contest the City's Final Determination. Nothing in this subsection shall preclude the right of an incumbent Tenant/Tenants renting a unit from a Landlord from contesting a claim of their own just cause vacancy or approval of an RROI Application increasing the Tenant's Rent.~~
- a. For purposes of determining recent patterns of increases or decreases in rent in other circumstances, the City shall utilize the Consumer Price Index as the basis for determining a pattern of rent increase.

(a) It is the intent of this chapter that exception to limitation on ~~r~~Rent increases be made only

  when the ~~l~~Landlord demonstrates that such adjustments are necessary to provide the ~~l~~Landlord with a fair return on investment.
  (b) The ~~c~~City will not grant an exception to the limitation on ~~r~~Rent increases for any unit where the ~~l~~Landlord has failed to bring the ~~r~~Rental ~~u~~Unit into compliance with the implied warranty of habitability <u>in accordance with Minnesota Statutes section 504B.161</u>.

SECTION 8

Section 193A.07 of the Saint Paul Legislative Code is hereby amended as follows:

~~Sec. 193A.07. - Exceptions.~~
 ~~(a) The limitation on rent increases shall not apply to the amount that a housing service provider can be reimbursed by a government entity under the Housing Support Act, Minn. Statutes chapter 256I.~~
 ~~(b) The limitation on rent increases shall not apply to changes in the tenant obligation for income based payments where the renter obligation is established as a share of income.~~

<u>Sec. 193A.07: Application and Complaint Processes.</u>
 <u>(a) General. All Landlords shall be entitled to a reasonable return on investment based on the factors in section 193A.06 of this Chapter. No provision of this ordinance shall be construed as preventing a Department Determination, Legislative Hearing Officer recommendation, or City Council determination, or any Final Determination, that would grant a Landlord a reasonable return on investment.</u>
  <u>(1) The Department shall establish an RROI Application and Complaint processes concerning this Chapter. Landlords shall be entitled to apply for an exception to the three (3) percent cap by filing an RROI Application.</u>
  <u>(2) Tenants shall also be entitled to file a Complaint contesting a Rent increase issued by the Landlord, except that no Complaint may be made where the Rent increase has been approved in a Final Determination.</u>
  <u>(3) The Department shall conduct a review of all RROI Applications and Complaints. The Department may meet with Landlords to provide technical assistance to complete an application, and the Department may also provide technical assistance to Tenants seeking to file a Complaint.</u>
  <u>(4) If the Department requests additional information from the Landlord related to an RROI Application and the Landlord does not respond within 60 days, the RROI Application shall be considered withdrawn and no further action will be taken by the Department.</u>
  <u>(5) Upon receipt of a complete RROI Application or Complaint, the Department shall conduct review of the RROI Application or Complaint and conduct any necessary investigation to determine whether Rent conforms to the requirements of this chapter.</u>
  <u>(6) Upon conclusion of the review of an RROI Application, the Department shall issue a Department Determination.</u>
  <u>(7) Upon conclusion of the review of a Tenant Complaint, the Department shall issue a letter to the Landlord notifying the Landlord of the Tenant Complaint.</u>
  <u>(8) A Landlord or Tenant may appeal any Department Determination to the Legislative Hearing Officer.</u>
  <u>(9) Upon a Final Determination, there is no further right to appeal to the Legislative Hearing Officer.</u>
 <u>(b) All data collected by the City shall be governed by relevant State, local and federal laws concerning data privacy and disclosure. These laws include, but are not limited to, Chapter 13 of the Minnesota State Statutes, and Chapter 94 of the Saint Paul Administrative Code.</u>
 <u>(c) Landlord Applications: A Landlord seeking to increase Rent more than three (3) percent must submit an RROI Application. The Landlord shall have the burden of demonstrating that the Rent increase above three (3) percent is necessary for a reasonable return on investment.</u>

(1) As part of an RROI Application, the Landlord must complete a Rent Increase Exception Form and Maintenance of Net Operating Income worksheet, except if the Landlord is requesting an increase pursuant to Section 193A.06(a)(9)(a). The RROI Application must include the address and all unit numbers that are the subject of the RROI Application for increased Rent. If the Landlord seeks to increase Rent for the entire building, they must provide all Rental Unit numbers.
(2) Upon receipt of an RROI Application, the City shall notify affected Tenants of the Landlord's application and that the Tenant will have the right to appeal upon a Department Determination.
(3) Reasonable Return on Investment shall be calculated in a manner to ensure a Landlord maintains their operating income in the base year in consideration of changes in the Consumer Price Index. The base year is 2019, subject to the following exceptions:
  i. If an RROI Application was previously approved for the Rental Unit(s), the base year shall be the year that was considered as the current year in the prior RROI Application.
  ii. Unless otherwise exempted from the limitation on Rent, if a Rental Unit enters the marketplace for the first time after 2019, the base year shall be the year the Unit entered the marketplace.
  iii. The Landlord or Tenant demonstrates that the base year had exceptional expenses or exceptional circumstances, as described in section (e) below.
(4) The City shall notify affected Tenants of a Department Determination approving an RROI Application in conjunction with notification to the Landlord of the approval in the Department Determination.
(5) The notice shall convey the following information in the City's limited English proficiency languages:
  i. That an RROI Application for a Rent increase was filed with the City;
  ii. The Department Determination of the RROI Application;
  iii. That the Tenant has a right to appeal the Department Determination, the timeline for appeal, and the manner of submitting an appeal;
  iv. That a full translation of the notice will be provided, upon request, from the City;
  v. That no Rent increase may take effect until a Final Determination by the City, and that a Final Determination will not occur until after the Tenant has had an opportunity to appeal;
  vi. Contact information for who the Tenant may call for more information.

(d) Tenant Complaints: Tenants may submit a Complaint concerning a Rent increase of more than three (3) percent in the absence of a Final Determination. Tenant Complaints shall consist of a completed City-created Complaint form and evidence concerning the Complaint.

(e) Landlords or Tenants may, as part of their respective RROI Application, Complaint, or appeal, present evidence to rebut the presumption that the base year net operating income provided a reasonable return. Grounds for rebuttal shall be based on at least one of the following findings:

  (1) Exceptional expenses in the base year: The Landlord's operating expenses in the base year were unusually high or low in comparison to other years. In such instances, adjustments may be made in calculating operating expenses in order that the base year operating expenses reflect average expenses for the property over a reasonable period of time. The following factors shall be considered in making such a finding:

    i. Extraordinary amounts were expended for necessary maintenance and repairs.
    ii. Maintenance and repair expenditures were exceptionally low so as to cause inadequate maintenance or significant deterioration in the quality of services provided.
    iii. Other expenses were unreasonably high or low notwithstanding the application of prudent business practices.

(2) <u>Exceptional circumstances in the base year. The gross income during the base year was disproportionately low due to exceptional circumstances. In such instances, adjustments may be made in calculating base year gross rental income consistent with the purposes of this chapter. The following factors shall be considered in making such a finding:</u>

    i. <u>The gross income during the base year was lower than it might have been because some residents were charged reduced Rent.</u>
    ii. <u>The gross income during the base year was significantly lower than normal because of the destruction of the premises and/or temporary eviction for construction or repairs.</u>
    iii. <u>The pattern of Rent increases in the years prior to the base year and whether those increases reflected increases in the Consumer Price Index.</u>
    iv. <u>Other exceptional circumstances.</u>

(f) <u>Department Review. The Department shall receive, review and process all RROI Applications and Complaints under this Section and shall consider all factors established in Section 193A.06. The Department may create and publish rules concerning the implementation of this chapter.</u>

(1) <u>The Department shall create a process to receive RROI Applications and Tenant Complaints.</u>
(2) <u>The Department shall, upon completion of review of RROI Application and Complaints, issue a Department Determination along with all required notifications.</u>
(3) <u>For purposes of RROI Applications based on capital improvements, such applications may be made to the Department up to one year in advance of the improvements being made. However, Rent increases may not take effect until after the improvement is made the Rental Unit.</u>

(g) <u>Appeal Process. The Landlord or Tenant shall have the right to appeal the Department Determination.</u>

(1) <u>Any appeals must be filed with the Legislative Hearing Officer within</u> ~~twenty-one (21)~~ <u>forty-five (45) days of the Department's Determination.</u>
(2) <u>The Legislative Hearing Officer shall notify the Landlord of any appeal filed by a Tenant, and any Tenant whose Rent may increase as a result of an appeal filed by a Landlord, in accordance with timelines in Saint Paul Legis. Code Ch. 18.02.</u>
(3) <u>The Legislative Hearing Officer shall have authority to review the RROI Application and/or Complaint, Department Determination, appeal documents, and any other records relevant to the appeal. The Legislative Hearing Officer shall commence a public hearing and make a recommendation to Council pursuant to Chapter 18 of the Code.</u>
(4) <u>In accordance with section 193A.04 of the Code, any Rent increase that is the subject of an appeal may not be imposed until Final Determination.</u>

(h) <u>Retaliation prohibited: In accordance with State law, a residential Tenant may not be evicted, nor may the residential Tenant's obligations under a lease be increased or the services decreased, if the eviction or increase of obligations or decrease of services is intended as a penalty for the residential Tenant's or housing-related neighborhood organization's complaint of a violation. The burden of proving otherwise is on the Landlord if the eviction or increase of obligations or decrease of services occurs within 90 days after filing the complaint, unless the court finds that the complaint was not made in good faith. After 90 days the burden of proof is on the residential Tenant. Landlords who violate State law concerning this subsection shall be liable to any and all remedies available under State and federal law. To the extent that State law differs from this provision, State law controls.</u>

SECTION 9

Section 193A.08 of the Saint Paul Legislative Code is hereby amended as follows:

~~Sec. 193A.08. - Enforcement, penalties, and prohibitions.~~

  (a) ~~Penalties for violation. In addition to any other remedy available at equity or law, failure to comply with the provisions of this chapter may result in criminal prosecution and/or administrative fines as provided by section 1.05 of the Code.~~
  (b) ~~Private right of action. Any Tenant aggrieved by a Landlord's noncompliance with this chapter may seek equitable relief in any court of competent jurisdiction to the extent permitted by law.~~
  (c) ~~Prohibition of waiver. Any lease provision which waives or purports to waive any right, benefit, or entitlement created in this chapter shall be deemed void and of no lawful force or effect.~~

<u>Sec. 193A.08. Exceptions.</u>

  (a) <u>The limitation on Rent increases shall not apply to:</u>
      (1) <u>The amount that a housing service provider can be reimbursed by a government entity under the Housing Support Act, Minn. Statutes chapter 256I.</u>
      (2) <u>Housing restricted by deed, regulatory restriction contained in an agreement with a government agency, or other recorded document as affordable housing for persons and families of very low, low, or moderate income, as defined by State or federal law, or subject to an agreement that provides housing subsidies for affordable housing for persons and families of very low, low, or moderate income, as defined in State and federal law.</u>
      (3) <u>Residential Rental Property that is Newly Constructed or had a change in occupancy classification.</u>
          a. <u>The limitation on Rent increases shall not apply to Newly Constructed Residential Rental Properties that were issued their first Building Certificate of Occupancy less than 20 years from the date of notice of a Rent increase.</u>
          b. <u>The limitation on Rent increases shall not apply to formerly Non-residential Properties or portions of Non-residential Properties that were issued a new or renewed Building Certificate of Occupancy because of a change in occupancy classification to Residential Rental Property.   Such Properties or portions of Properties that have changed occupancy classification from Non-residential to Residential Rental Property are exempted from the limitation on Rent increases for 20 years from the date of the first Building Certificate of Occupancy issued after the change.</u>
  (b) <u>If a Residential Rental Unit is not subject to the limitation on Rent increases pursuant to this section, the Landlord shall notify prospective Tenants that the Rental Unit is not subject to Chapter 193A.04 Rent limitations prior to a finalized Rental Agreement.</u>

SECTION 10

Section 193A.09 of the Saint Paul Legislative Code is hereby amended as follows:

~~Sec. 193A.09. - Severability.~~

~~If any of the parts or provisions of this chapter or the application thereof to any person or circumstance is held invalid or unconstitutional by a decision of a court of competent jurisdiction, the remainder of this~~

~~chapter, including the application of such part or provisions to persons or circumstances other than those to which it is held invalid, shall not be affected thereby and shall continue in full force and effect. To this end, the provisions of this chapter are severable.~~

Sec. 193A.09- Enforcement, penalties, and prohibitions.

(a) Penalties for violation. In addition to any other remedy available at equity or law, failure to comply with the provisions of this chapter may result in criminal prosecution and/or administrative fines as provided by section 1.05 of the Code.

(b) Private right of action. Any Tenant aggrieved by a Landlord's noncompliance with this chapter may seek equitable relief in any court of competent jurisdiction to the extent permitted by law.

(c) Prohibition of waiver. Any lease provision which waives or purports to waive any right, benefit, or entitlement created in this chapter shall be deemed void and of no lawful force or effect.

## SECTION 11

Section 193A.10 of the Saint Paul Legislative Code is hereby amended as follows:

~~Sec. 193A.10. - Effective date.~~

~~This section shall become effective May 1, 2022.~~

Sec. 193A.10 Severability.

If any of the parts or provisions of this chapter or the application thereof to any person or circumstance is held invalid or unconstitutional by a decision of a court of competent jurisdiction, the remainder of this chapter, including the application of such part or provisions to persons or circumstances other than those to which it is held invalid, shall not be affected thereby and shall continue in full force and effect. To this end, the provisions of this chapter are severable.

## SECTION 12

Section 193A.11 of the Saint Paul Legislative Code is hereby created as follows:

Sec. 193A.11. - Effective date.

This Ordinance shall become effective January 1, 2023 following passage, approval, and publication.

At a meeting of the City Council on 9/21/2022, this Ordinance was Passed.

**Yea:** 5  Councilmember Brendmoen, Councilmember Tolbert, Councilmember Noecker, Councilmember Prince, and Councilmember Balenger
**Nay:** 2  Councilmember Jalali, and Councilmember Yang

*Shari Moore*

**Vote Attested by Council Secretary** Shari Moore

**Date** 9/21/2022

*[signature]*

**Approved by the Mayor**

Melvin Carter III

**Date** 9/23/2022